THE CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
CLAYTON DIVISION

RECEIVED

MAY 3 0 2006

T. B. VAN ITALLIE, JR.
J...19

WILLIE MAE PUGH,                    )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )     CIVIL ACTION NO. _CV-2006-034_
                                    )
JOHNSON & JOHNSON, INC;             )
JOHNSON & JOHNSON                   )
PHARMACEUTICAL RESEARCH             )
AND DEVELOPMENT, L.L.C.;            )
ORTHO-MCNEIL                        )
PHARMACEUTICAL, INC.; BRAD          )
MORROW, Sales Representative;       )
JAMIE FORBES, Sales Representative; )
and FICTITIOUS DEFENDANTS A, B,     )
C, D, E, and F, being those persons, sales )
representatives, firms or corporations )
whose fraud, scheme to defraud,     )
negligence, and/or other wrongful   )
conduct caused or contributed to the )
Plaintiff's injuries and damages, and )
whose true names and identities are )
presently unknown to the Plaintiff but )
will be substituted by amendment when )
ascertained,                        )
                                    )
        Defendants.                 )

**SUMMONS**

This service by certified mail of this summons is initiated upon the written request

of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

NOTICE TO:         Johnson & Johnson, Inc.
                   One Johnson & Johnson Plaza
                   New Brunswick, New Jersey 08933

**EXHIBIT**

**A**

The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

> **Jere L. Beasley**
> **Andy D. Birchfield**
> **Wesley Chadwick Cook**
> **Beasley, Allen, Crow, Methvin, Portis & Miles**
> **234 Commerce Street**
> **Montgomery, Alabama 36104**

the Plaintiff's attorney. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

DATED: _5-22-06_

_____
Circuit Clerk

IN THE CIRCUIT COURT OF
BARBOUR COUNTY, ALABAMA
CLAYTON DIVISION

| | |
|---|---|
| WILLIE MAE PUGH, | ) |
| | ) |
|      **Plaintiff,** | ) |
| | ) |
|      vs. | )     CIVIL ACTION NO. _CV-2006-034_ |
| | ) |
| JOHNSON & JOHNSON, INC; | ) |
| JOHNSON & JOHNSON | ) |
| PHARMACEUTICAL RESEARCH | ) |
| AND DEVELOPMENT, L.L.C.; | ) |
| ORTHO-MCNEIL | ) |
| PHARMACEUTICAL, INC.; BRAD | ) |
| MORROW, Sales Representative; | ) |
| JAMIE FORBES, Sales Representative; | ) |
| and FICTITIOUS DEFENDANTS A, B, | ) |
| C, D, E, and F, being those persons, sales | ) |
| representatives, firms or corporations | ) |
| whose fraud, scheme to defraud, | ) |
| negligence, and/or other wrongful | ) |
| conduct caused or contributed to the | ) |
| Plaintiff's injuries and damages, and | ) |
| whose true names and identities are | ) |
| presently unknown to the Plaintiff but | ) |
| will be substituted by amendment when | ) |
| ascertained, | ) |
| | ) |
|      **Defendants.** | ) |

## COMPLAINT

    1.    This is a civil action brought on behalf of Plaintiff Willie Mae Pugh (hereinafter referred to as "Plaintiff"). Plaintiff is a citizen of the United States and the state of Alabama.

    2.    Defendant Johnson & Johnson, Inc. is incorporated in the state of New Jersey and has its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

3.     At all times relevant hereto, Johnson & Johnson, Inc. was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling, and distributing pharmaceutical and other products including the Ortho Evra birth control patch.

4.     Johnson & Johnson, Inc. does business in the state of Alabama and, on information and belief, at all times relevant hereto, manufactured, advertised, marketed, promoted, sold, and distributed the Ortho Evra birth control patch in the state of Alabama.

5.     Defendant Johnson & Johnson Pharmaceutical Research and Development, L.L.C., a subsidiary of Johnson & Johnson, Inc., is organized under the laws of New Jersey and has its principal place of business at 920 Route 202 South, Raritan, New Jersey 08869.

6.     At all times relevant hereto, Johnson & Johnson Pharmaceutical Research and Development, L.L.C. was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling, and distributing pharmaceutical products including the Ortho Evra birth control patch.

7.     Johnson & Johnson Pharmaceutical Research and Development, L.L.C. does business in the state of Alabama and, on information and belief, at all times relevant hereto, manufactured, advertised, marketed, promoted, sold, and distributed the Ortho Evra birth control patch in the state of Alabama.

8.     Defendant Ortho-McNeil Pharmaceutical, Inc., also a subsidiary of Johnson & Johnson, Inc., is a Delaware corporation and has its principal place of business at 1000 U.S. Highway 2002, Raritan, New Jersey 08869.

2

9.    At all times relevant hereto, Ortho-McNeil Pharmaceutical, Inc. was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling, and distributing pharmaceutical and other products including the Ortho Evra birth control patch.

10.    Ortho-McNeil Pharmaceutical, Inc. does business in the state of Alabama and, on information and belief, at all times relevant hereto, manufactured, advertised, marketed, promoted, sold, and distributed the Ortho Evra birth control patch in the state of Alabama.

11.    Defendant Brad Morrow, whose address is 1612 Clear Creek Drive, Prattville, Alabama 36067, is a sales representative of Ortho-McNeil Pharmaceutical, Inc. At all times relevant hereto, Defendant Morrow was in the business of marketing, selling and distributing the Ortho Evra birth control patch.

12.    Defendant Jamie Forbes, whose address is 601 6th Avenue, Opelika, Alabama 36801, is a sales representative of Ortho-McNeil Pharmaceutical, Inc.  At all times relevant hereto, Defendant Forbes was in the business of marketing, selling and distributing the Ortho Evra birth control patch.

13.    Fictitious Defendants A, B, C, D, E, and F are those persons, sales representatives, district managers, firm or corporations whose fraud, scheme to defraud, and/or other wrongful conduct caused or contributed to the injuries sustained by the Plaintiff, and whose true names are unknown to Plaintiff at this time, but will be substituted by amendment when ascertained.  At all times relevant hereto, the Fictitious Defendants were in the business of marketing, selling, and distributing the Ortho Evra birth control patch in and from the state of Alabama, including Barbour County.

3

14.    When the word "Defendants" is used herein, it is meant to refer to all real and fictitious Defendants mentioned in the style of this Complaint, all of whom are jointly and severally liable to Plaintiff for her injuries.

15.    At all times relevant hereto, each Defendant acted as an agent for each of the other Defendants, within the course and scope of the agency, regarding the acts and omissions alleged herein, and are therefore jointly and severally liable to Plaintiff for her injuries.

16.    Plaintiff's claim accrued in whole or in part in Barbour County, Alabama and Plaintiff resides in Barbour County, Alabama. Some of the Defendants are foreign corporations which have been and are currently engaged in business, directly or by authorized agent, in Barbour County, Alabama. Venue and jurisdiction are therefore proper. The claims of the Plaintiff herein satisfy the jurisdictional amount of this Court.

17.    Ortho Evra is a transdermal contraceptive patch designed to be worn on a woman's skin.

18.    At all times relevant hereto, the Defendants themselves, or through others, did manufacture, create, design, test, label, package, supply, market, sell, advertise, and otherwise distribute Ortho Evra.

19.    Defendants purposefully minimized and understated health hazards and risks associated with Ortho Evra. Defendants, through promotional literature, deceived potential users of Ortho Evra and their physicians by relaying positive information, including testimonials from satisfied users and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects of the drug. Defendants falsely and fraudulently withheld relevant information

4

from potential Ortho Evra users. Further, Defendants falsely and fraudulently withheld relevant information from physicians, thereby preventing those physicians from conducting a complete and fully-informed risk/benefit analysis before prescribing the product.

20.    At or about the time of introducing Ortho Evra to the market, Ortho-McNeil Pharmaceutical Inc.'s patent for its best-selling oral contraceptive, Ortho Tri-Cyclen, was about to expire.

21.    It was, therefore, a priority for Ortho-McNeil Pharmaceutical, Inc. to obtain FDA approval of Ortho Evra so that it could offset the lost income previously realized from Ortho Tri-Cyclen.

22.    Defendants, by and through their agents, servants, and employees, filed a New Drug Application (hereinafter referred to as "NDA") for Ortho Evra with the FDA on or about December 21, 2000, denoted as NDA 21-280.

23.    The NDA for Ortho Evra did not include adequate safety data and prior to the FDA's approval of Ortho Evra, the Defendants knew or should have known that the risk of injury or death from thromboembolic events is three times as high among women who use the Ortho Evra patch compared to women who use traditional oral contraceptive pills.

24.    Prior to the FDA's approval of Ortho Evra's NDA, the only studies conducted by Defendants that specifically examined the product's effect on humans were Phase III clinical trials funded and conducted by Defendants.

25.    In those clinical trials, Ortho Evra caused or contributed to cases of stroke, pulmonary embolism and other thrombotic injuries. The incidence of embolism and

5

thrombotic injuries in these clinical trials was approximately six times greater than the incidence of the same events in a widely-used class of oral contraceptives using the hormone levonorgestrel.

26.     In light of those risks, the FDA Medical Officer's Review expressed serious safety concerns regarding Ortho Evra when he stated, "Post-marketing surveillance for DVT (deep vein thrombosis) and PE (Pulmonary Embolism) events will be important, as there are potential serious adverse risks (with two cases of pulmonary emboli in the clinical trials) with this new delivery system for contraception...." Further, "[t]he reviewer's primary concern ... is the possible increase risk of DVT and or PE associated with the transdermal delivery of norelgestromin (17-deacetyl norgestimate) for combination hormonal contraception" and wondered if "the transdermal delivery system and the relatively steady-state serum hormone concentrations for 17d-norgestimate and ethinyl estradiol [was] a factor in the two cases of pulmonary emboli seen in the three pivotal studies." *Ortho Evra, New Drug Application 21-180 Medical Officer's Review* (November 20, 2001).

27.     Despite the Medical Officer's concerns as stated above, the Ortho Evra NDA was approved and Defendants undertook an aggressive marketing campaign, including the use of direct-to-consumer advertising.

28.     The advertising, by affirmation, misrepresentation, or omission, falsely and fraudulently sought to create the image and impression that Ortho Evra use was safe and had fewer side effects and adverse reactions than other methods of contraception.

29.     In the package insert accompanying Ortho Evra, Defendants claimed that "the contraceptive patch is expected to be associated with similar risks" to that of other

6

hormonal contraceptives, including birth control pills, injectables, implants, and the vaginal ring. Defendants made this claim despite their knowledge, based on Ortho Evra's clinical trials, that this statement was not true.

30.    In the seventeen-month period from April 2002 through September 2003, the FDA received 9,116 reports of adverse reactions relating to Ortho Evra. By way of comparison, the leading oral contraceptive (which had six times as many users as Ortho Evra) only generated 1,237 adverse event reports during the six-year period from November 1997 though September 2003.

31.    From May 2002 through April 2003, there were 44 adverse events of injury or death associated with Ortho Evra. These incidents related to blood-clots, brain-related injuries, deep vein thromboses, pulmonary embolisms, strokes, and heart attacks. During the same time period, the leading oral contraceptive had only 17 adverse events reported to the FDA for these same injuries.

32.    Notwithstanding the well-documented safety issues associated with Ortho Evra, Defendants have never conducted any meaningful post-market surveillance as suggested in the FDA Medical Officer's Review.

33.    At all times relevant herein, Defendants failed to adequately warn physicians and consumers, including Plaintiff, that the risk of developing blood clots, pulmonary emboli, strokes, heart attacks, or deep vein thromboses from Ortho Evra is significantly higher than the risk of developing these conditions while using oral contraceptives.

34.    As a direct and proximate result of Plaintiff's use of Ortho Evra, Plaintiff was caused to suffer injuries and damages including a stroke and blood clot, physical

7

pain and suffering, mental and emotional anguish and distress, and economic loss. Plaintiff will continue to suffer these injuries and damages in the future as a result of Defendants' conduct.

35.    As a direct and proximate result of the use of Ortho Evra, Plaintiff was required to, and did employ physicians to examine, treat, and care for her, and Plaintiff incurred, and will continue to incur hospital, medical, and incidental expenses.

36.    At all times relevant hereto, defendants actually knew of the defective nature of their product as herein set forth and continued to design, manufacture, market, distribute, and sell this product so as to maximize sales and profits at the expense of the publics health and safety in conscious disregard of the foreseeable harm caused by this product.  Defendant's conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will recklessness, gross negligence or willful and intentional disregard of the individual rights of Willie Mae Pugh.

## COUNT I

### (Strict Liability)

37.    Plaintiff realleges all prior paragraphs of this Complaint as if fully set out herein.

38.    At all times relevant hereto, Ortho Evra was defective and unsafe in manufacture, and was so at the time it was distributed by Defendants and used by Plaintiff.  Ortho Evra was defective in that it was not properly prepared and/or was not accompanied by proper warnings regarding all possible adverse side effects associated with its use.  Given the severity of the adverse effects, the warnings given did not accurately reflect the symptoms and severity of the adverse effects. Ortho Evra was also

8

defective in that the product manufactured and distributed differed from the manufacturer's intended results. These defects caused serious injuries to consumers when used in its intended and foreseeable manner.

39.    Ortho Evra was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of Ortho Evra involved substantial dangers not readily recognizable by the ordinary user of the product. Defendants failed to warn of the known or knowable likelihood of injury including, but not limited to thromboembolic events.

40.    The pharmaceutical drug Ortho Evra, designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied, and sold to distributors by Defendants was further defective due to inadequate post-marketing warning or instruction because after Defendants knew or should have known of the risks of injury from Ortho Evra, they failed to promptly respond to and warn about the likelihood of injury, including the likelihood of suffering a stroke and developing a blood clot.

41.    The pharmaceutical drug Ortho Evra, designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied, and sold to distributors by Defendants reached Plaintiff without substantial change, and Plaintiff did not know, nor had reason to know, at the time she used Ortho Evra, or at any time prior thereto, of the existence of the foregoing described defects. These defects caused the injuries and damages to Plaintiff as alleged in this Complaint.

9

42.    Defendants knew that Ortho Evra was to be used without inspection for defects by the consumer and that Ortho Evra was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

Plaintiff demands judgment against Defendants jointly and severally for such compensatory and punitive damages as a jury may determine to be appropriate and necessary, in excess of the jurisdictional requirements of this court, plus costs.

## COUNT II

### (Negligence)

43.    Plaintiff realleges all prior paragraphs of this Complaint as if fully set out herein.

44.    Defendants had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain, supply, properly warn, prepare for use, and sell Ortho Evra.

45.    At all times relevant hereto, Defendants knew, or in the exercise of reasonable care, should have known, that Ortho Evra was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, maintained, supplied, provided, prepared, and sold with proper warnings, it was likely to injure the user.

46.    Defendants so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, over-promoted, and

10

supplied Ortho Evra, that it was dangerous and unsafe for the use and purpose for which it was intended.

47.     Defendants were aware of the probable consequences of their conduct. Despite the fact that Defendants knew or should have known that Ortho Evra caused serious injuries, they failed to disclose the known or knowable risks associated with the product as set forth above. Defendants willfully and deliberately failed to avoid those consequences, and in doing so, Defendants acted with a conscious disregard of Plaintiff's safety.

48.     As a result of Defendants' carelessness and negligence, Ortho Evra caused Plaintiff to sustain the damages and injuries as alleged in this Complaint.

Plaintiff demands judgment against Defendants jointly and severally for such compensatory and punitive damages as a jury may determine to be appropriate and necessary, in excess of the jurisdictional requirements of this court, plus costs.

## COUNT III

### (Breach of Implied Warranty)

49.     Plaintiff realleges all prior paragraphs of this Complaint as if fully set out herein.

50.     At all times relevant hereto, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied, and sold Ortho Evra, and prior to the time it was prescribed to Plaintiff, Defendants impliedly warranted to Plaintiff and to her agents that it was of merchantable quality and safe for the use for which it was intended.

51.    Plaintiff and her agents relied on the skill and judgment of Defendants in selecting and using Ortho Evra.

52.    Ortho Evra was unsafe for its intended use and it was not of merchantable quality as warranted by Defendants in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user.    Ortho Evra was unaccompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution.    Ortho Evra caused Plaintiff to sustain damages and injuries as alleged in this Complaint.

Plaintiff demands judgment against Defendants jointly and severally for such compensatory and punitive damages as a jury may determine to be appropriate and necessary, in excess of the jurisdictional requirements of this court, plus costs.

## COUNT IV

### (Breach of Express Warranty)

53.    Plaintiff realleges all prior paragraphs of this Complaint as if fully set out herein.

54.    The manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandising, advertising, promoting, supplying, and selling of Ortho Evra was expressly warranted by Defendants to be safe for use by Plaintiff and other members of the general public.

55.    At the time the express warranties were made, Defendants had knowledge of the purpose for which Ortho Evra was to be used and warranted the same to be, in all respects, fit, safe, effective, and proper for such purpose. Ortho Evra was unaccompanied

12

by warnings of its dangerous propensities that were either known or knowable at the time of distribution.

56.     Plaintiff and her physicians reasonably relied upon the skill and judgment of Defendants and their express warranty in using Ortho Evra.  The warranty and representations were untrue in that Ortho Evra caused severe injury to Plaintiff and was unsafe and, therefore, unsuited for the use for which it was intended.  Ortho Evra thereby caused Plaintiff to sustain damages and injuries as alleged in this Complaint.

Plaintiff demands judgment against Defendants jointly and severally for such compensatory and punitive damages as a jury may determine to be appropriate and necessary, in excess of the jurisdictional requirements of this court, plus costs.

## COUNT V

### (Fraud)

57.     Plaintiff realleges all prior paragraphs of this Complaint as if fully set out herein.

58.     Defendants falsely and fraudulently represented to Plaintiff, her physicians, and members of the general public that Ortho Evra was safe for use as a contraceptive.

59.     The representations by Defendants were in fact false.  The true facts were that Ortho Evra was not adequately tested, that there were frequent, severe, protracted, debilitating, difficult, life threatening, and disabling side effects and adverse effects from the product, that the product caused injuries, and Defendants did not disclose or warn users and their physicians about the known risk of injury in using Ortho Evra. Defendants misrepresented the safety of Ortho Evra, represented that Ortho Evra was

safe for use as a contraceptive, and concealed warnings of the known or knowable risks of injury in using Ortho Evra.

60.    When Defendants made these representations, they knew they were false. Defendants made these representations with the intent to defraud and deceive Plaintiff and with the intent to induce her to use Ortho Evra as a contraceptive in order to increase Defendants' sales and profits.

61.    At the time Defendants made these representations and at the time Plaintiff took the actions herein alleged, Plaintiff and her physicians were ignorant of the falsity of Defendants' representations and reasonably believed them to be true.  In reliance upon these representations, Plaintiff was induced to, and did use Ortho Evra as herein described.  If Plaintiff had known the actual facts, she would not have used the Ortho Evra patch.  The reliance of Plaintiff and her physicians upon Defendants' representations was justified because these representations were made by individuals and entities that appeared to be in a position to know the true facts.

62.    As a result of Defendants' fraud and deceit, Plaintiff was caused to sustain the injuries and damages as alleged in this Complaint.

Plaintiff demands judgment against Defendants jointly and severally for such compensatory and punitive damages as a jury may determine to be appropriate and necessary, in excess of the jurisdictional requirements of this court, plus costs.

## COUNT VI

### (Negligent Misrepresentation)

63.    Plaintiff realleges all prior paragraphs of this Complaint as if fully set out herein.

14

64.     Defendants had a duty to disclose the true facts regarding the safety and testing of Ortho Evra since they were the only entities capable of knowing and reporting the true facts. Furthermore, Defendants had a duty to ensure it had a reasonable basis for making the representations as set forth above.

65.     Defendants made these representations with no reasonable ground for believing them to be true. They did not have accurate or sufficient information concerning these representations. Furthermore, Defendants were aware that without such information they could not accurately make these representations.

66.     These representations were made physicians prescribing Ortho Evra and physicians relied on the representations about the safety of Ortho Evra when prescribing Ortho Evra.

67.     At the time these representations were made, Defendants concealed from Plaintiff and her physicians their lack of information on which to base their representations and their consequent inability to make these representations accurately.

68.     Defendants made these representations with the intent to induce Plaintiff to use Ortho Evra in order to increase Defendants' sales and profits.

69.     Defendants falsely represented to Plaintiff, her physicians, and members of the general public that the Ortho Evra patch was safe for use as a contraceptive. The representations by Defendants were in fact false. The true facts were that Ortho Evra was not safe for its intended purpose and was, in fact, dangerous to the health and body of Plaintiff and thereby caused her injuries as alleged in this Complaint.

70.     At the time Defendants made these representations, and at the time Ortho Evra was prescribed to Plaintiff, Plaintiff and her physicians were ignorant of the falsity

15

of these representations and reasonably believed them to be true. In reliance upon these representations, Plaintiff used the Ortho Evra patch as herein described. If Plaintiff had known the true facts, she would not have used Ortho Evra. The reliance of Plaintiff and her physicians upon Defendants' representations was justified because these representations were made by individuals and entities that appeared to be in a position to know the true facts.

71.    As a result of Defendants' false representations and concealment, Plaintiff was caused to sustain the herein described injuries and damages.

Plaintiff demands judgment against Defendants jointly and severally for such compensatory and punitive damages as a jury may determine to be appropriate and necessary, in excess of the jurisdictional requirements of this court, plus costs.

## COUNT VII

### (Fraud by Concealment)

72.    Plaintiff realleges all prior paragraphs of this Complaint as if fully set out herein.

73.    At all times relevant hereto, Defendants had the duty and obligation to disclose to Plaintiff and to her physicians the true facts concerning Ortho Evra: that Ortho Evra was dangerous and defective; that Ortho Evra was likely to cause serious consequences to users and including injuries such as those experienced by Plaintiff. Defendants withheld this information from Plaintiff, her physician, and the general public and while concealing the following material facts.

74.    At all times relevant hereto, Defendants had the duty and obligation to disclose to Plaintiff and to her physicians the true facts concerning the Ortho Evra patch –

16

that it would cause injuries including, but not limited to, strokes, pulmonary emboli, thromboses, blood clots and heart attacks.

75.    At all times relevant hereto, Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff, Plaintiff's physicians and the general public with the intent to defraud as alleged in this Complaint.

76.    At all times relevant hereto, neither Plaintiff nor her physicians were aware of the facts set forth above. Had Plaintiff been aware of the true facts of Ortho Evra, she would not have used the contraceptive.

77.    As a result of the concealment or suppression of the facts set forth above, Plaintiff sustained injuries and damages as set forth in this Complaint.

Plaintiff demands judgment against Defendants jointly and severally for such compensatory and punitive damages as a jury may determine to be appropriate and necessary, in excess of the jurisdictional requirements of this court, plus costs.

## DAMAGES

78.    Upon the trial of this case, it will be shown that Plaintiff was caused to sustain injuries and damages as a direct and proximate result of Defendants' conduct, individually, separately, and in concert; and Plaintiff would respectfully request the Court and jury to determine the amount of loss Plaintiff has suffered and incurred, in the past and in the future, not only from a financial standpoint, but also in terms of anxiety, distress, fear, pain and suffering secondary to any physical injury and damages.

79.    At all times relevant hereto, Defendants actually knew of the defective nature of the Ortho Evra patch as herein set forth and continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the public health and safety in conscious disregard of the foreseeable harm caused by

17

the Ortho Evra patch. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill-will, recklessness, gross negligence, or willful or intentional disregard of the Plaintiff's individual rights. The Plaintiff, therefore, is entitled to punitive damages from the corporate and individual Defendants, as more specifically set forth herein.

80.    Plaintiff hereby requests a trial by jury on all issues in this case.

Plaintiff prays that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiff recovers damages as set forth above from Defendants, including cost of Court, pre-judgment and post-judgment interest at the legal rates, and punitive damages, and that Plaintiff receive such other and further relief, both general and special, at law and in equity, to which Plaintiff may be justly entitled under the facts and attending circumstances.

Respectfully submitted,

Jere L. Beasley (BEA020)
Andy D. Birchfield, Jr. (BIR006)
Wesley Chadwick Cook (COO079)
Shane Seaborn (SEA027)
Attorneys for Plaintiff

OF COUNSEL:
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, Alabama 36104
Telephone: (334) 269-2343
Facsimile:  (334) 954-7555

18

**PENN & SEABORN, LLC**
Post Office Box 688
Clayton, Alabama 36016
Telephone: (334) 775-9778
Facsimile: (334) 775-9779

## JURY DEMAND

Plaintiff respectfully demands trial by jury on all counts in this cause.

OF COUNSEL

**Defendants' Addresses for Service:**

Johnson & Johnson, Inc.
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933

Johnson & Johnson Pharmaceutical Research
and Development, L.L.C.
920 Route 202 South
Raritan, New Jersey 08869

Ortho-McNeil Pharmaceutical, Inc.
1000 U.S. Highway 2002
Raritan, New Jersey 08869

Brad Morrow
1612 Clear Creek Drive
Prattville, Alabama 36067

Jamie Forbes
601 6th Avenue
Opelika, Alabama 36801

19

David S. Nix
Barbour County Circuit Court Clerk
Post Office Box 219
Clayton, Alabama 36016

**CERTIFIED MAIL**

7160 3703 9849 1053 9807

RETURN RECEIPT REQUESTED



$ 05.36
MAILED FROM ZIP CODE 36114



Van I tollic
5/30/06

Johnson & Johnson, Inc.
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933





Thank you for using Return Receipt Service

RETURN RECEIPT REQUESTED
USPS MAIL CARRIER
DETACH ALONG PERFORATION

2. Article Number

7140 3701 7647 1063 7807

3. Service Type  CERTIFIED MAIL
4. Restricted Delivery? (Extra Fee)   ☐ Yes
1. Article Addressed to:

Johnson & Johnson, Inc.
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933

PS Form 3811, January 2005        Domestic Return Receipt

COMPLETE THIS SECTION ON DELIVERY
A. Received by (Please Print Clearly)   B. Date of Delivery
C. Signature
X   ☐ Agent   ☐ Addressee
D. Is delivery address different from item 1?   ☐ Yes   ☐ No
If YES, enter delivery address below:

CV-2006-034
D001

Thank you for using Return Receipt Service