**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **WILLIE MAE PUGH,** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| **v.** | * **CASE NO.: 2:06-cv-00551-WHA-SRW** |
| | * |
| **JOHNSON & JOHNSON, INC. et al.** | * |
| | * |
| **Defendants.** | * |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO REMAND**

COMES NOW the Plaintiff, Willie Mae Pugh, and hereby submits her brief in support of her Motion to Remand. Johnson & Johnson, Inc., Johnson & Johnson Pharmaceutical Research and Development, L.L.C., Ortho-McNeil Pharmaceutical, Inc., (hereinafter referred to as "The Defendants"), has failed to establish that this Court has jurisdiction over this proceeding, and, as a result, the Plaintiff's Motion to Remand is due to be **GRANTED**, and this cause remanded back to the Circuit Court of Barbour County, Alabama for the following reasons:

1. This Court lacks subject matter jurisdiction. The Plaintiff and two of the individually named Defendants are citizens of Alabama. As such, complete diversity of jurisdiction is absent. The Defendants have failed to establish that Brad Morrow and Jamie Forbes ("Individual Resident Defendants") were fraudulently joined as parties to this cause to defeat federal jurisdiction. The Defendants have failed to establish that there is "no possibility" that the Plaintiff can prevail in state court against the Individual Resident Defendants. In fact, the allegations made against the Individual Resident Defendants are sufficiently pleaded under and supported by Alabama law. Further, the

allegations set forth in Plaintiff's state court complaint adequately set forth factual and legal bases to support the claims against the Individual Resident Defendants, and the stated allegations clearly indicate that the Individual Resident Defendants acted independently and in concert with Defendant Johnson & Johnson.  Joint and several liability and alternative liability, contrary to the confusing arguments of the other Defendants, are well-recognized methods of pleading under Alabama law.

## I.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

This product liability action arises from the injuries of Willie Mae Pugh as a result of using Ortho-Evra®, a prescription transdermal contraceptive, designed to prevent pregnancy.  As set forth in her state-court complaint, Ms. Pugh was prescribed and used Ortho-Evra® and as a result suffered a stroke.  Ms. Pugh used the prescription product Ortho-Evra® and the damages and injuries resulting from Ms. Pugh's use of the prescription product Ortho-Evra® occurred in whole or in part in Barbour County, Alabama.  As a direct and proximate result of Ms. Pugh using Ortho-Evra®, she suffered injuries including a stroke, physical pain and suffering, emotional distress, and other damages as set forth in more detail in the state-court complaint.

The Defendants, the Individual Resident Defendants, and/or the named fictitious defendants designed, manufactured, marketed, distributed, and/or sold Ortho-Evra®, despite knowing that Ortho-Evra® caused serious and potentially life-threatening side effects.  The Defendants, jointly and severally, encouraged the use of Ortho-Evra® through an aggressive marketing campaign, including through its sales representatives detailing physicians, and through direct-to-consumer advertising.  The direct-to-consumer advertising included advertisements on television and in major magazines and

newspapers as well as direct mail throughout Alabama.  In addition, the Defendants misrepresented the effectiveness of Ortho-Evra® and concealed the known and serious side effects from physicians and from the consuming public, including Ms. Pugh.  The Defendants knew of the defective and unreasonably dangerous nature of Ortho-Evra®, yet continued to design, manufacture, and sell Ortho-Evra® so as to maximize gross sales and profits in conscious disregard of the foreseeable harm to be caused by Ortho-Evra®. Though the Defendants were aware that Ortho-Evra® was unreasonably dangerous as designed, they failed to adequately test Ortho-Evra® and failed to warn the public of its dangerous propensities.  The Individual Resident Defendants or the sales representatives who detailed the prescribing physician in this cause were informed of the product's dangerous propensities, but participated in the scheme to suppress and withhold this information from physicians and the consuming public.  The sales representatives, in concert with the other Defendants, benefited by the suppression of this critical information by increasing the sales of the drug, which correspondingly increased commissions, bonuses and incentives earned from the sale of Ortho-Evra®.   The Defendants also failed to provide Ms. Pugh with timely and adequate post-marketing warnings or instructions as additional information became available to the Defendants about the risks posed to those who used or would use Ortho-Evra®, including Ms. Pugh.

Furthermore, Defendants failed to exercise ordinary care and were negligent in the manufacture, marketing, sale, and testing of Ortho-Evra® as it placed the product into the stream of commerce.  Despite their knowledge that Ortho-Evra® caused serious side effects, the Defendants continued to market Ortho-Evra® to the public, including Ms. Pugh, when there were safer, alternative methods of treatment available.

The Defendants also breached express and implied warranties made in relation to Ortho-Evra®. Both before Ms. Pugh was first prescribed Ortho-Evra® and during the period in which she used Ortho-Evra®, the Defendants expressly warranted and represented that Ortho-Evra® was safe, and impliedly warranted that Ortho-Evra® was safe and fit for its intended, ordinary uses. The fact that the Defendants were providing false information to the public about Ortho-Evra® was known or became known to the Individual Resident Defendants and other sales representatives of the Defendants throughout this country, and the company sales representatives became active participants in this mass cover-up of critical safety information. Ms. Pugh and her prescribing physician reasonably relied upon the representations of the Defendants and relied upon the Defendants' superior knowledge as to the safety and fitness for the intended use of Ortho-Evra®. Contrary to the warranties and representations of the Defendants, Ortho-Evra® was not safe and could and did cause serious side effects and harm to those who used the product, and accordingly was not fit for its intended, ordinary purpose. At the time the Defendants marketed, sold and distributed Ortho-Evra® for use by Ms. Pugh, the Defendants knew their representations about the safety of Ortho-Evra® were false, or they made those representations with reckless disregard for their falsity. The Defendants' wrongful acts or omissions were a contributing or proximate cause of Ms. Pugh's injuries.

On May 22, 2006, the Plaintiff filed suit in the Circuit Court of Barbour County, Alabama. Plaintiff asserted various causes of action against the Defendants, including product liability under the AEMLD, negligence, breach of express warranty, breach of

implied warranty, fraudulent suppression and concealment, and fraudulent misrepresentation.

On June 21, 2006, the Defendants filed a Notice of Removal with this Court. Plaintiff now urges this Court to remand this action to state court in accordance with 28 U.S.C. § 1447(c) and the authority referenced herein.

## II.    SUMMARY OF ARGUMENT

This case represents one of many attempts by the Defendants to "manufacture" diversity jurisdiction, with total disregard for whether such jurisdiction actually exists. The Defendants' contention that the Plaintiff has named the Individual Resident Defendants as a tactic to attempt to defeat diversity is an affront to Plaintiff's due process rights to seek relief from those who are responsible for Ms. Pugh's injuries in the forum of her choosing.

This and other federal District Courts in the Eleventh Circuit have repeatedly rejected the frivolous attempts by Pharmaceutical Defendants to remove validly pleaded cases from state to federal court. See, e.g., Irvin v. Merck & Co., Inc., et al, Case No. 03-80514-cv-Hurley (S.D. Fla. Oct. 9, 2003); Turner v. Merck & Co., Inc., et al, Case No. 2:05cv702-T (M.D. Ala. Sept. 21, 2005); Struthers v. Merck & Co., Inc., et al., Case No. 2:06cv127-MHT (M.D. Ala. March 13, 2006); Leverett v. Merck & Co., Inc., et al., Case No. 3:06cv128-MHT (M.D. Ala March 15, 2006).[1]  Judge Myron Thompson in his remand orders in Struthers and Leverett, recently wrote:

> This lawsuit, which was removed from state to federal court based on
> diversity-of-citizenship jurisdiction, 28 U.S.C. §§ 1332, 1441, is now
> before the court on plaintiff's motion to remand.  The Court agrees with

---

[1] See Exhibit "A", attached and filed with this brief.  See also Exhibit "D" for other federal districts courts which have ruled accordingly in other pharmaceutical-related litigation.

plaintiff that this case should be remanded to state court. First, there has not been <u>fraudulent joinder</u> of any resident defendant (that is, plaintiff has colorable claims against such a defendant), <u>see</u> <u>Coker v. Amoco Oil Co.</u>, 709 F.2d 1433, 1440 (11th Cir. 1983); <u>Cabalceta v. Standard Fruit Co.</u>, 883 F.2d 1553, 1561 (11th Cir. 1989). Second, there has not been <u>fraudulent misjoinder</u> of any resident defendant (that is, plaintiff has reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), <u>see</u> <u>Tapscott v. MS Dealer Service Corp.</u>, 77 F.3d 1353, 1360 (11th Cir. 1996).

Judge Hurley, in his remand order in <u>Irvin</u>[2], likewise held the plaintiffs presented colorable claims that, if proven, would subject the in-state, sales representative defendants to liability. These cases are indistinguishable from the present case.

Earlier this month, United States District Judge William Steele remanded five Zyprexa® cases filed in various circuit courts encompassed by the Southern District. Eli Lilly unsuccessfully alleged fraudulent joinder as a means to disregard the citizenship of the in-state defendants. Judge Steele flatly rejected Eli Lilly's contention that judicial economy would be served by allowing the MDL court to decide the merits of the jurisdictional issues, and sharply criticized the "reflexive rule that automatically defers decision to an MDL court whenever it can be predicted that an issue at least superficially may arise in other transferred cases." <u>Betts v. Eli Lilly and Company, et al.</u>, Case No. 06-0259-WS-B (S.D. Ala. June 5, 2006)[3]. The instant case is nearly identical.

The sole question before this Court is whether this action should be remanded as having been improvidently removed. Removal is improper where complete diversity of citizenship is lacking. In this case, the Plaintiff and the Individual Resident Defendants, as set forth in the state-court complaint, are residents of Alabama. Thus, this Court

---

[2] The <u>Irvin</u> case was removed from and remanded back to state court and resulted in the court charging costs and attorneys' fees against Merck for its frivolous removals. <u>Irvin v. Merck Co., Inc.</u> Case No. 03-80514-cv-Hurley (S.D.Fla. Feb. 14, 2005). See Exhibit "B" attached and filed with this brief.
[3] See Exhibit "C" attached and filed with this brief.

would not have had original jurisdiction had Plaintiff chosen to prosecute this action in federal court.

The Defendants have wholly failed to establish that the Plaintiff fraudulently joined the Individual Resident Defendants as a means to defeat diversity of citizenship. The Plaintiff's Complaint alleges claims against all the Defendants that, if proven at trial, will sustain a jury verdict against all Defendants. As averred and as set forth in more detail herein, the Individual Resident Defendants were active participants in a scheme to mislead doctors and the consuming public about the dangers of Ortho-Evra®. Pursuant to Alabama law, the Individual Resident Defendants can be found liable for their active participation in a fraudulent scheme in this state.

### III.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1447(c), after a case has been removed to federal district court but "at any time before final judgment," the plaintiff may move for remand, and "the case *shall* be remanded [if] it appears that the district court lacks subject matter jurisdiction." (Emphasis added.) It is well settled that federal courts are courts of limited jurisdiction and are "empowered to hear only cases within the judicial power established by Article III of the United States as authorized by Congress. See University of South Alabama v. American Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (quoting Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994)). Because the statutes governing removal are jurisdictional, and because removal jurisdiction raises significant federalism concerns, removal statutes must be strictly construed in favor of state court jurisdiction and against removal. See Shamrock Oil & Gas v. Sheets, 313 U.S. 100, 108-09, 61 S. Ct. 868

(1941); University of South Alabama, 168 F.3d at 411; Clay v. Brown & Williamson Tobacco Corp., 77 F. Supp. 2d 1220, 1221 (M.D. Ala. 1999) (DeMent, J.).

"An action is not properly removable if it consists of a non-separable controversy involving both resident and nonresident defendants." Coker v. Amoco Oil Co., Inc., 709 F.2d 1433, 1439 (11th Cir. 1983). Thus, where a removing defendant asserts federal subject matter jurisdiction based on an amount in controversy over $75,000 and the diversity of citizenship of the parties, the defendant must show there is actually complete diversity; that is, every plaintiff must be diverse from every defendant. Triggs v. John Crum Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998) (citing Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1355 (11th Cir. 1996)).

In an action based upon a removal petition and a motion to remand, the defendant, as the removing party, bears the burden of establishing federal subject matter jurisdiction. See Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1373 (11th Cir. 1998). Because federal courts are courts of limited jurisdiction, all doubts about federal subject matter jurisdiction on removal should be resolved in favor of remand to state court, University of South Alabama, 168 F.3d at 411; Pacheco de Perez, 139 F.3d at 1373; Seroyer v. Pfizer, Inc., 991 F. Supp. 1308, 1312 (M.D. Ala. 1997); and all questions of fact and controlling law should be resolved in favor of the plaintiff, Shamrock Oil, 313 U.S. at 108-09; University of South Alabama, 168 F.3d at 411. Accord Cope v. American Int'l Group, 2006 WL 317238 *1 (M.D. Ala. 2006) (Albritton, Senior J.) ("[T]he Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.").

## IV.    ARGUMENT

**A.    Diversity jurisdiction does not exist.**

The Defendants do not dispute that complete diversity is missing on the face of Plaintiff's Complaint.  Rather, the Defendants, in contravention of the settled law of this State, contends that the citizenship of the Individual Resident Defendants should be disregarded on the ground that they were fraudulently joined.  The Defendants have failed to carry their burden on this issue and, thus, this cause is due to be remanded back to the Circuit Court of Barbour County, Alabama.

### 1.    The standard for fraudulent joinder supports remand.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." Triggs, 154 F.3d at 1287.  Arguments regarding fraudulent joinder fail if there is any possibility that a state court would find that the Complaint states a cause of action against a resident defendant.  Id. at 1287.  The removing party bears the burden of establishing fraudulent joinder.  See Coker, 709 F.2d at 1440; see also, Pacheco de Perez, 139 F.3d at 1380; Cope at * 2.  That burden is a heavy one.  See Pacheco de Perez, 139 F.3d at 1380; Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997); B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (1981).  To prove that a resident defendant has been fraudulently joined, the removing defendants must show either that "there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts."  Coker, 709 F.2d at 1440; Pacheco de Perez, 139 F.3d at 1380; Crowe, 113 F.3d at 1538.  See also Triggs v. John

Crump Toyota, 154 F.3d 1284, 1287 (11th Cir. 1998)(setting forth three occasions when fraudulent joinder may exist).

"While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' the jurisdictional inquiry 'must not subsume substantive determination.'" Crowe, 113 F.3d at 1538 (quoting B. Inc., 663 F.2d at 550)(citations omitted). "[T]he trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." Id. (quoting B., Inc., 663 F.2d a 548-49). "When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Crowe, 113 F.3d at 1538. According to the Court in Crowe:

> In terms of this circuit's law, the main point for us is this one: For a plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved."

Id. at 1541-42 (quoting B., Inc., 663 F.2d at 550).

Stated differently, "[i]n the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." Crowe, 113 F.3d at 1542. "Where there have been allegations of fraudulent joinder . . . the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a

sham … and is not fraudulent in fact or in law." B., Inc., 663 F.2d at 550 (quoting Bobby Jones Garden Apartments v. Suleski, 391 F.2d 172, 177 (5th Cir. 1968)).

### 2.    The resident defendant was not fraudulently joined.

The Defendants have made no claim that Plaintiff fraudulently pleaded jurisdictional facts.  Accordingly, this Court's inquiry is limited to determining whether there is a *possibility* that the state court might find, under Alabama law, that the Plaintiff has asserted valid claims against the resident defendant.  See Triggs, 154 F.3d at 1287; Crowe, 113 F.3d at 1538.  Where, as here, the Notice of Removal is filed before the Plaintiff has had full opportunity to develop her claims against the Individual Resident Defendants through discovery, Alabama federal courts have assessed those claims in accordance with the standard of Fed. R. Civ. P. 11.  See, Clay, 77 F. Supp. 2d at 1224 (De Ment, J.); see also Sellers v. Foremost Ins. Co., 924 F. Supp. 1116, 1118-19 (M.D. Ala. 1996) (Thompson, J.).  "[T]o block a fraudulent-joinder charge based on lack of evidence, a plaintiff who has not been able to engage in full discovery must be able to provide some showing that her claim against the resident defendant has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."  Sellers, 924 F. Supp. at 1119.  "[T]o block a fraudulent-joinder charge *based on lack of legal support*, a plaintiff need only show that her claim against a resident defendant is warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."  Id. at 1119 n. * (emphasis in original).

"If there is *a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that

the joinder was proper and remand the case to state court." <u>Coker</u>, 709 F.2d at 1440-41 (<u>citing</u> <u>Davis v. GMC</u>, 353 F. Supp.2d 1203, 1207 (M.D. Ala. 2005) (emphasis added). The Plaintiff is not required to have a winning case against a resident defendant, but only have a *possibility* of stating a valid cause of action in order to defeat arguments of fraudulent joinder. <u>Triggs</u>, 154 F.3d at 1287.

The Plaintiff has asserted valid claims under Alabama law against the Individual Resident Defendants.

<blockquote>

**a.    The Plaintiff has stated valid product liability (AEMLD) claims against the Individual Resident Defendants.**

</blockquote>

To establish a prima facie case under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), a plaintiff must demonstrate that:

(1)    He suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

(a)    the seller is engaged in the business of selling such a product, and

(b)    it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2)    Showing the above elements, a plaintiff has proved a prima facie case although

(a)    the seller has exercised all possible care in the preparation and sale of her product, and

(b)    the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.

<u>See</u> <u>Casrell v. Altec Industries, Inc.</u>, 335 So. 2d 128, 132-33 (Ala. 1976); <u>Atkins v. American Motors Corp.</u>, 335 So. 2d 134, 141 (Ala. 1976).

It is well settled under Alabama law that employees of a company may be held liable for their active participation in the torts of the company. "[O]fficers and employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity." Ex parte Charles Bell Pontiac, 496 So. 2d at 775 (citing Candy H. v. Redemption Ranch, Inc., 563 F. Supp. 505, 513 (M.D. Ala. 1983)); see Clay v. Brown & Williamson Tobacco Corp., 77 F. Supp. 2d 1220, 1224 (M.D. Ala. 1999); see Seaborn v. R. J. Reynolds Tobacco Co., 1996 WL 943621 (M.D. Ala., Dec. 30, 1996) (NO. CIV. A. 96-T-1540-N).

In the case at bar, the Individual Resident Defendants aggressively marketed Ortho-Evra® to healthcare professionals, including Ms. Pugh's physician, by frequently calling on physicians, distributing samples to physicians to be given to patients, conducting educational seminars for physicians, and distributing sales literature to healthcare professionals and the consuming public. The Individual Resident Defendants, in communications with physicians, compared the efficacy of Ortho-Evra® to other existing contraceptive products, sought to distinguish Ortho-Evra® from other contraceptives already on the market, and worked to persuade physicians to prescribe Ortho-Evra® to their patients. The Individual Resident Defendants provided physicians with Ortho-Evra® product information. Throughout these activities, the Individual Resident Defendants worked to increase the sales of Ortho-Evra® and their own personal financial gain.

The Defendants including the Individual Resident Defendants had far superior knowledge of the efficacy and safety profile of Ortho-Evra® over that of prescribing physicians and patients who used the product. Ms. Pugh and her prescribing physician

detrimentally relied on information provided by the Individual Resident Defendants. The Individual Resident Defendants provided false, fraudulent, incorrect, misleading and/or incomplete information (such as inadequate warnings of risks of harm and adverse effects from the use of Ortho-Evra®) to the prescribing physician, and the prescriber passed this erroneous information on to his patients, including Ms. Pugh. Ms. Pugh relied on such information through the representations of her physician. If these allegations are proven to be true, a finding of individual liability under AEMLD against the Individual Resident Defendants is more than a mere "possibility."

In <u>Clay</u> and <u>Seaborn</u>, *supra*, this Court found that, to the extent a manufacturer defendant allegedly violated AEMLD, "it acted through its employees; the company does not employ ghosts." <u>Clay</u>, 77 F. Supp. 2d at 1224; <u>Seaborn</u>, 1996 WL 943621, at *3. The Court allowed the plaintiffs to pursue the distributors and employee sales representatives individually -- even in the absence of any personal contact with the plaintiffs -- and to substitute new individual defendants in the event plaintiffs had named the wrong individuals at the outset. Significantly, the Court noted that discovery might well establish that the individual in-state defendant might have had superior knowledge to others, which could establish his independent liability under the AEMLD.

Other United States District Courts have also consistently rejected arguments that in-state defendant sales representatives are fraudulently joined in the context of products liability actions, seeking damages as the result of a defective drug. See <u>Barry Pace, et al. v Parke-Davis</u>, No. 3:00-3046 (N.D. Ala. Nov. 21, 2000)(Johnson, J.); <u>see also</u> <u>Donald McCaffery v. Warner-Lambert Co.</u>, et al., No. 4:00-2848 (N.D. Ala. Dec. 8, 2000) (Propst, J.); <u>see also</u> <u>Acton v. R.J. Reynolds Tobacco Co.</u>, No. 96-C-2737-W (N.D. Ala.

Oct. 23, 1996).  And other United States District Courts have remanded pharmaceutical drug cases, such as the case at bar, to state courts or refused to stay the proceedings – perhaps, most notably, the Vioxx-related products liability cases.  See, Landrum v. Merck & Co., Inc., et al., Case no. CV-05-01055-J (N.D. Ala. May 25, 2005) (holding that diversity jurisdiction was absent and remanding to state court, relying upon Marshand v.Wyeth, et al., CV-03-CO-319-5-W (N.D. Ala. 2004)); Sokarda, et al. v. Merck & Co., Inc., et al., Case no. SACV-05-177-JFW (MANX) (C.D. Calif. April 22, 2005) (holding that under California law, case should be remanded to state court based upon properly named in-state defendant); Amisch v. Merck Co., Inc., et al., Case no. 04-CV-847-DRH (S.D. Ill. Dec. 22, 2004) (holding that motion to stay pending JPML's ruling on motion to transfer should be denied and that forum court should address subject matter jurisdiction, and remanding case to state court because defendant failed to meet its burden to sustain removal); Brame v. Merck & Co., Inc., et al., Case no. 05-034-GPM (S.D. Ill. Feb. 17, 2005) (holding that defendant failed to meet its burden to establish fraudulent joinder, refusing to stay proceedings pending ruling by JPML, and remanding case back to state court); McQuay v. Merck & Co., Inc., et al., Case No. 05-038-GPM (S.D. Ill. Feb. 17, 2005) (same); Tomlin v. Merck & Co., Inc., et al., Case no. 04-14335-CIV-Moore (S.D. Fla. Feb. 14, 2005) (holding that motion to stay pending JPML was inappropriate, holding that plaintiff adequately pleaded a claim against sales representative under Florida law, finding that there was no fraudulent joinder, and remanding the case back to state court).[4]

---

[4] See Exhibit "D", attached and filed with this Brief.

As Judge Ira DeMent wrote in <u>Clay</u>, 77 F. Supp. 2d at 1223, quoting <u>de Perez</u>, 139 F.3d at 1380-81 and <u>Crowe</u>, 113 F.3d at 1538, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." The question of whether drug sales representatives can be held liable under the AEMLD is "an arguable under state law." As a result, the Plaintiff has stated "possible" viable claims against the Individual Resident Defendants.

> **b. The Plaintiff has alleged valid claims of fraud, fraudulent misrepresentation, fraudulent suppression and concealment against the Individual Resident Defendants.**

Under Alabama law, in order to state a claim for fraud and fraudulent misrepresentation, a plaintiff must show that the defendant made a misrepresentation of material fact, that he made it willfully to deceive, recklessly, without knowledge, or mistakenly, that the misrepresentation was justifiably relied on by the plaintiff under the circumstances, and that the misrepresentation caused damage as a proximate consequence. Ala. Code § 6-5-101 (1975); <u>Harrington v. Johnson-Rast & Hays Co.</u>, 577 So.2d 437 (Ala.1991). In the case at bar, Plaintiff alleges that the Defendants and the Individual Resident Defendants, together or separately, negligently, recklessly, intentionally and fraudulently made material misrepresentations that Ortho-Evra® was safe. The Individual Resident Defendants did so with the intent to induce physicians to prescribe and for consumers, including Ms. Pugh, to purchase Ortho-Evra®. Moreover, Plaintiff alleges that, at the time the Defendants made these representations, the Defendants were aware of the falsity of these representations and/or made these representations with reckless disregard to the truth. Plaintiff also alleges that she and her

prescribing physician detrimentally relied upon the material misrepresentations and suppressions of the Defendants and, as a result, suffered serious injuries.

The Defendants assert in its Notice of Removal that claims of fraud cannot be maintained against the Individual Resident Defendants. District Courts in Alabama have repeatedly rejected similar fraudulent joinder claims in the context of fraudulent misrepresentation and suppression claims against pharmaceutical sales representatives and have remanded these cases to state court. See Floyd v. Wyeth, No. 03-C-2564-M (N.D. Ala. Oct. 20, 2003) (Clemon, J.); Crittenden v. Wyeth, No. 03-T-920-N (M.D. Ala. Nov. 21, 2003) (Thompson, J.); Terrell v. Wyeth, No. CV-03-BE-2876-S (N.D. Ala. Dec. 12, 2003) (Bowdre, J.) ("Although the plaintiffs' claims against defendant Parker appear to raise novel questions of Alabama state law, this court will not speculate that the plaintiffs have *no* possibility of establishing a cause of action against this non-diverse defendant. Little, if any, discovery has been done to-date in this case; thus, it would be premature for this court to make rash decisions regarding the nature and the timing of the injury sustained by the plaintiffs, or the employment history of defendant Parker. Nor can the court conclusively determine that plaintiffs would not be successful in urging its various theories under Alabama law."); Ballard v. Wyeth, No. 03-T-1255-N (N.D. Ala. Jan. 23, 2004) (Thompson, J.); Brunson v. Wyeth, No. 03-T-1167-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); Blair v. Wyeth, No. 03-T-1251-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); Storey v. Wyeth, No. CV-04-BE-27-E (N.D. Ala. Jan. 30, 2004) (Bowdre, J.); Cash v. Wyeth, No. 03-RRA-3378-E (N.D. Ala. Feb. 3, 2004) (Armstrong, Mag. J.); Marshal v. Wyeth, No. CV-04-TMP-179-S (N.D. Ala. Feb. 18, 2004) (Putnam, Mag. J.); McGowan v. Wyeth, No. CV-04-TMP-298-S (N.D. Ala. Feb. 24, 2004)

(Putnam, Mag. J.); <u>Johnson v. Wyeth</u>, No. CV-04-TMP-224-S (N.D. Ala. Feb. 23, 2004) (Putnam, Mag. J.); <u>Bradford v. Wyeth</u>, No. 03-P-3157-5 (N.D. Ala. Feb. 27, 2004) (Proctor, J.); <u>Smith v. Wyeth</u>, No. 04-P-226-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); <u>Boudreaux v. Wyeth</u>, No. CV-04-P-227-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); <u>Bridges v. Wyeth</u>, No. 04-AR-0297-J (N.D. Ala. Mar. 2, 2004) (Acker, J.); <u>Hough v. Wyeth</u>, No. 04-H-393-S (N.D. Ala. Mar. 5, 2004) (Hancock, J.); <u>Brogden v. Wyeth</u>, No. 04-T-068-S (M.D. Ala. Mar. 8, 2004) (Thompson, J.); <u>Reeder v. Wyeth</u>, No. 04-T-066-N (M.D. Ala. Mar. 8, 2004) (Thompson, J.); <u>Eaton v. Wyeth</u>, No. CV-04-P-380-M (N.D. Ala. Mar. 9, 2004) (Proctor, J.); <u>Allen v. Wyeth</u>, No. 04-CV-0238-T (M.D. Ala. Apr. 9, 2004) (Thompson, J.); <u>Chestnut v. Wyeth</u>, No. 04-CV-0295-T (M.D. Ala. May 3, 2004) (Thompson, J.); <u>King v. Wyeth</u>, No. 04-CV-0409-T (M.D. Ala. May 24, 2004) (Thompson, J.); <u>Culpepper v. Wyeth</u>, No. 04-CV-0411-T (M.D. Ala. May 24, 2004) (Thompson, J.); <u>Braden v. Wyeth</u>, No. 04-CV-0384-T (M.D. Ala. May 24, 2004) (Thompson, J.); <u>Cross v. Wyeth</u>, No. 03-0882-BH-M (S.D. Ala. Mar. 29, 2004) (Hand, J.); <u>Bennett v. Wyeth</u>, No. 04-CV-0416-T (M.D. Ala. June 2, 2004) (Thompson, J.).[5]

Federal District Courts in Alabama have rightly found that plaintiffs who allege claims of fraudulent misrepresentation and suppression against sales representatives of drug companies have alleged valid claims under Alabama law. Accordingly, the Individual Resident Defendants were not fraudulently joined in this case.

---

[5] See Exhibit "E," attached and filed with this brief.

      **c.**     **The Plaintiff's complaint was pleaded with sufficient particularity to support claims against the Individual Resident Defendants.**

The Defendants also assert that Plaintiff failed to plead her claim of fraudulent misrepresentation with particularity. However, in her Complaint, Plaintiff sufficiently alleges that the Individual Resident Defendants fraudulently misrepresented and/or suppressed material information regarding the safety and efficacy of Ortho-Evra® and its harmful side effects in order to induce physicians to prescribe the product and to induce consumers, including Ms. Pugh, to purchase Ortho-Evra®. Plaintiff further alleges that the Individual Resident Defendants misrepresented and/or suppressed the fact that Ortho-Evra® was not safe and that the Defendants were under a duty to communicate this information to Plaintiff, that the Individual Resident Defendants marketed, sold, supplied and/or otherwise distributed Ortho-Evra®, that Ortho-Evra® was defective and unreasonably dangerous as designed, was unreasonably dangerous due to inadequate testing, and was defective as marketed due to inadequate warnings or instructions, that the Defendants failed to warn Ms. Pugh of the dangers of Ortho-Evra®, that the Defendants failed to provide post-marketing warnings to Ms. Pugh after she began to use the product, and that as a direct and proximate result of the Defendants placing Ortho-Evra® on the market and Ms. Pugh's use of Ortho-Evra®, Ms. Pugh suffered injuries including a stroke. These allegations are sufficient to support the claims asserted by Plaintiff in her Complaint; likewise, the claims are pleaded with sufficient particularity to support Plaintiff's fraud claims against the Defendants, including the Individual Resident Defendants.

To the extent the Court finds Plaintiff's Complaint deficient to satisfy the heightened pleading requirements, such a finding should not lead this Court to an automatic finding of fraudulent joinder. See Bloodsworth, 2005 WL at *11 (citing Duffin v. Honeywell Intern., Inc., 312 F. Supp. 2nd 869, 870 (N.D. Miss. 2004) ("a plaintiff should ordinarily be given an opportunity to amend their complaint to allege fraud with greater particularity, before such claims are dismissed with prejudice upon a finding of fraudulent joinder") (citing Hart v. Bayer Corp., 199 F.3d 239, 248 n. 6 (5th Cir. 2000)).

In the Declarations of the Individual Resident Defendants, submitted by the other Defendants in this case, the Defendants contend in conclusory and self-serving fashion that they were not active participants in the wrongdoing alleged by the Plaintiff in her complaint. However, it is not the Individual Resident Defendants' contentions that bear the most attention; rather, it is the absence of a critical contention that they do not make which should be the focus of this Court's attention. Nowhere in the Declarations is it ever asserted that either Brad Morrow or Jamie Forbes lacked specific knowledge about the dangerous propensities of Ortho-Evra, particularly with respect to the increased risk of strokes and other thrombotic events prior to the time the drug was prescribed by Plaintiff's physician. Such a baseless allegation by the Individual Resident Defendants would likely amount to perjury when the facts and evidence of this case are presented to a jury.

## V.    CONCLUSION

In all of its efforts, the Defendants have failed to cite any directly applicable or controlling authority and consequently it has failed in its burden of proving that there is no possibility that Plaintiff can establish a cause of action against Resident Defendants Brad Morrow and Jamie Forbes.  For the reasons outlined above, this Court lacks subject matter jurisdiction.  Therefore, Plaintiff respectfully urges the Court to remand this action in its entirety to the Circuit Court of Barbour County, Alabama.


Respectfully submitted this 23rd day of June, 2006.


_/s/  WESLEY CHADWICK COOK_
**JERE L. BEASLEY (BEA020)**
**ANDY D. BIRCHFIELD, JR. (BIR006)**
**WESLEY CHADWICK COOK (COO079)**

**Attorneys for the Plaintiff**

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW, METHVIN,**
  **PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone: (334) 269-2343
Fax:    (334) 954-7555

L. Shane Seaborn
PENN & SEABORN, L.L.C.
P. O. Box 688
Clayton, Alabama  36016
(334) 775-9778

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing document upon the parties

<u>as listed below</u> by placing a copy of same in the United States Mail, first class postage

prepaid, on this the <u>23rd</u> day of June, 2006.

Joseph P. H. Babington
Thomas Ryan Luna
Helmsing, Leach, Herlong, Newman & Rouse, P.C.
Post Office Box 2767
Mobile, Alabama 36652

Susan M. Sharko
Drinker, Biddle & Reath, LLP
500 Campus Drive
Florham Park, New Jersey 07932

　　/s/ Wesley Chadwick Cook　　　　　
**OF COUNSEL**