FILED

2006 Jun-23  AM 11:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **JESSICA SOUTHERN,** )<br>)<br>**Plaintiff,** )<br>)<br>**vs.** )<br>)<br>**PFIZER, INC., individually and as** )<br>**successor in interest to Parke-** )<br>**Davis and Warner Lambert** )<br>**Company, et al.,** )<br>)<br>**Defendants.** ) | **CASE NO.: 2:06-CV-836-VEH** |

### MEMORANDUM OPINION

Pending before the court is Plaintiff's Emergency Motion to Remand (doc. 10). This motion has been briefed extensively and is ripe for review. A hearing has not been requested on the instant motion, and the court is satisfied that a decision can be reached based on the papers submitted by the parties.[1] For the reasons stated herein, the Motion to Remand is due to be **DENIED**.

### Procedural History

Plaintiff Jessica Southern commenced this action in the Circuit Court of Jefferson County, Alabama, on March 9, 2006, by filing a Complaint against

---

[1]Plaintiff requested that, should the court determine a hearing to be necessary, such a hearing be conducted in an expedited fashion.



EXHIBIT

A

Defendants Pfizer Inc., individually and as successor in interest to Parke-Davis and Warner-Lambert Company LLC, Tracy Ocampo, and Rochelle Hendricks. Pfizer Inc. is a Delaware corporation having its headquarters in New York. Warner-Lambert Company LLC is a Delaware limited liability corporation with Pfizer Inc. as its sole shareholder. Parke-Davis is an unincorporated division of Warner-Lambert Company LLC, and is not a separate corporation or legal entity. Tracy Ocampo and Rochelle Hendricks are both citizens of Alabama.

Plaintiff Southern is a citizen of Alabama.

The Complaint asserts claims against all Defendants for violation of the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), failure to warn, breach of an implied warranty of merchantability, breach of an implied warranty of fitness for a particular purpose, breach of an express warranty, unjust enrichment, negligence, fraudulent misrepresentation, negligent and reckless misrepresentation, and civil conspiracy .

Defendants removed this action to the United States District Court for the Northern District of Alabama on April 28, 2006. The basis for removal is that complete diversity among the parties to this action exists due to the fraudulent joinder of Ocampo and Hendricks. On May 5, 2006, Defendants filed a Motion to Stay this action pending transfer of this case to a Judicial Panel on Multidistrict Litigation

2

(hereinafter "MDL") that has been established in the District of Massachusetts.[2]

Southern filed an Emergency Motion to Remand on May 10, 2006.

## Facts[3]

In November, 2003, Dr. Scott Williams, M.D. prescribed Neurontin to

Southern to treat her chronic fatigue syndrome, a condition for which the drug did not

have FDA approval. Southern continued taking Neurontin until she attempted suicide

on March 15, 2004. Southern alleges that her suicide attempt is the proximate and

legal result of ingesting Neurontin.

Neurontin, a product developed, manufactured, and promoted by Defendant

Pfizer, Inc. was approved by the FDA in 1993 as adjunctive therapy for the treatment

of certain types of epilepsy. During the early to mid 1990's, Defendant Pfizer Inc.

filed patents for Neurontin claiming it to be effective in the treatment of depression,

---

[2]Defendants invite the court to stay this case without reaching a decision on Plaintiff's Emergency Motion to Remand so that the instant motion may be decided by the MDL once the case is transferred. Such a course of action would be improper in that the parties are entitled to a determination of this court's jurisdiction as soon as is practicable. The interests of judicial economy, which the MDL has, in part, been established to preserve, are best served through a jurisdictional determination by this court at this time. Additionally, the facts which establish (or fail to establish) fraudulent joinder are likely to be unique to this case.

[3]As it must, the court will decide all disputed issues of fact in favor of the plaintiff; however, where an affidavit is undisputed by the plaintiff, the court will give weight to the sworn statement over unsupported allegations in the Complaint. *See Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005). None of the evidence offered by Southern rebuts the statements in Hendricks' or Ocampo's affidavits. Under *Legg*, absent rebuttal, the court gives weight to the affidavits.

3

neurogenerative disease, mania, bipolar disease, anxiety, and panic. Neurontin was not approved by the FDA for those uses. Neurontin is still sold to consumers in the United States as a prescription medication.

Beginning in 1995, Pfizer Inc. and Warner-Lambert Company LLC (hereinafter "Corporate Defendants") began to craft marketing and sales techniques designed to promote Neurontin as a treatment for diseases and ailments with respect to which the drug had not received FDA approval. The Corporate Defendants consciously decided to circumvent the normal regulatory process of the FDA pertaining to the marketing of a drug for a specific use and proceeded to actively market Neurontin for certain off-label uses.[4] The Corporate Defendants realized increased profits as a result of their illegal actions.

In response to the Corporate Defendants' off-label marketing scheme, the United States Attorney for the District of Massachussetts brought criminal charges

---

[4] Nothing in the voluminous evidentiary submission provided by Southern in regard to the instant motion to remand suggests a plan by any of the Defendants to market Neurontin as a treatment for Southern's diagnosed chronic fatigue syndrome. The evidence, however, outlines detailed plans by the corporate defendants to this action to market Neurontin as a treatment for a host of specific diseases and ailments. Southern begs this court to infer that, despite a lack of any evidence to support her position, and in light of the overwhelming evidence of Defendants' actions of promoting Neurontin for other specific diseases and ailments, Defendants also promoted, to Southern's treating physician, Neurontin as a treatment for chronic fatigue syndrome. Hendricks' and Ocampo's affidavits clearly contradict Southern's allegations. Following the Eleventh Circuit's holding in *Legg*, Southern's allegations and evidence is insufficient to contradict Hendricks' and Ocampo's sworn affidavits to the contrary. *See* 428 F.3d 1317 (11th Cir. 2005).

against the Corporate Defendants. Concurrently, the attorneys general from each of the 50 states commenced litigation against the Corporate Defendants under the relevant consumer protection statutes of those states. On May 13, 2004, the Corporate Defendants agreed to plead guilty to federal criminal charges and simultaneously entered into settlement agreements with the attorneys general.

Tracy Ocampo has been employed by Pfizer Inc. as a Territory Representative since 1998. She has never been an employee of Warner-Lambert Company LLC nor has she ever worked for Pfizer Inc. as a medical liason. At no time has she called on physicians, including Southern's treating physician, regarding Neurontin. Prior to March 15, 2004, Ocampo made no statements or representations to physicians regarding the safety or efficacy of Neurontin.

Rochelle Hendricks was the sales representative who called on Southern's treating physician regarding Neurontin during the period of Southern's treatment with Neurontin for chronic fatigue syndrome.[5] Hendricks never provided verbal or written information to any physicians, including Southern's treating physician, regarding the use of Neurontin to treat chronic fatigue syndrome. If a physician requested information regarding an off-label use of Neurontin, Hendricks forwarded the request to Pfizer for a response. Any such response was communicated directly to the

---

[5]The use of Neurontin to treat chronic fatigue syndrome is an off-label use.

5

requesting physician from Pfizer, and such a communication did not travel through Hendricks.

The information used by Ocampo and Hendricks during the course of their employment was provided to them exclusively by Pfizer Inc. Ocampo and Hendricks had no involvement in the manufacture, development, or testing of Neurontin nor were they involved in the development or preparation of the prescribing information, including the written warnings and labels, for the drug. Ocampo and Hendricks were not expected to nor did they conduct any independent research regarding Neurontin.

## Standard of Review

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Under Eleventh Circuit precedent, joinder is fraudulent in three situations: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional issue; and (3) when a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to

6

the claim against the nondiverse defendant.[6] *Id. See also Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993); *Tapscott v. MS Dealer Service Corp.*; 77 F.3d 1353, 1360 (11th Cir. 1996), *overruled as conflicting with prior panel decision on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). If any of these situations are present, the nondiverse defendant has been fraudulently joined and its citizenship should be ignored for purposes of determining jurisdiction. *Id.*

"In evaluating a motion to remand, the removing party bears the burden of demonstrating federal jurisdiction." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by the parties." *Id.* at 1380. "While the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b) ... the jurisdictional inquiry must not subsume substantive determination." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (internal citations and marks omitted). A district court

---

[6]In the present case, Defendants assert that only the first type of fraudulent joinder is applicable; accordingly, the court will offer no analysis as to the second and third situations under which a fraudulent joinder can occur.

must resolve all questions of fact in favor of the plaintiff; however, there must be some dispute of fact before the court can resolve that fact in the plaintiff's favor. *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005). When a defendant's affidavits are not disputed by the plaintiff, the court "cannot then resolve the facts in the [plaintiff's] favor based solely on the unsupported allegations in the Plaintiff's complaint." *Id.*

A federal court must be certain of its jurisdiction before "embarking upon a safari in search of a judgment on the merits." *Crowe*, 113 F.3d at 1538. A "district court's authority to look into the ultimate merits of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." *Crowe*, 113 F.3d at 1542.

## Discussion[7]

## I.   Southern cannot maintain a cause of action against Hendricks or Ocampo

Southern's arguments as to the improper removal of this case are based solely

---

[7]Southern contends, in her Emergency Motion to Remand, that this court "need not reach the issue of whether Ocampo is fraudulently joined, because a possible cause of action exists against Defendant Hendricks, rendering her claims of fraudulent joinder untenable." A court's decision on a motion to remand is a jurisdictional determination under which the court is obligated to determine whether any nondiverse defendant has been fraudulently joined in an action. *See Triggs*, 154 F.3d at 1287. An acquiescence to Southern's position leading to a refusal by this court to examine the merits of Southern's claims against Ocampo would be contrary to this court's necessary task of a jurisdictional determination and would violate the interests of judicial economy.

on the claims asserted against Hendricks and Ocampo. The issue before this court is whether a possible claim for violation of the AEMLD, failure to warn, breach of an implied warranty of merchantability, breach of an implied warranty of fitness for a particular purpose, breach of an express warranty, unjust enrichment, negligence, fraudulent misrepresentation, negligent and reckless misrepresentation, or civil conspiracy might be maintained against Hendricks or Ocampo in state court. A possibility of success as to any of the aforementioned claims will lead to a determination that Hendricks or Ocampo is not fraudulently joined in this action, that complete diversity does not exist among the parties, and that this action is due to be remanded.

It is undisputed that Hendricks and Ocampo transmitted information to Southern's prescribing physician regarding Neurontin. Further, it is undisputed that Hendricks and Ocampo: (1) did not prescribe Neurontin to Southern; (2) did not participate in the development or preparation of the prescribing information, including the warnings, for Neurontin; and (3) did not make any knowing misrepresentations concerning the safety of efficacy of Neurontin to any person.

A.   **As a matter of law, Southern cannot possibly maintain a claim for violation of the AEMLD against Hendricks or Ocampo in state court.**

Following a close scrutiny of the case law cited by both parties, and after

9

careful consideration, the court concludes that there is no possibility that Southern could establish or maintain a claim against Hendricks or Ocampo in Alabama state court for a violation of the AEMLD. The AEMLD establishes a cause of action against "a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, [thereby] constitut[ing] negligence as a matter of law." *Castrell v. Altec Industries, Inc.*, 335 So.2d 128, 132 (Ala. 1976). In order to establish liability under the AEMLD, Southern must prove:

> [She] suffered injury or damages to [herself] or [her] property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if (a) the seller was engaged in the business of selling such a product, and (b) it was expected to, and did, reach the user or consumer without substantial change in the condition in which it was sold.

*Key v. Maytag Corp.*, 671 So.2d 96, 101 (Ala. Civ. App. 1995); *quoting Atkins v. American Motors Corp.,* 335 So.2d 134 (Ala.1976).

Southern asserts that, as a "seller" of Neurontin, Hendricks or Ocampo faces possible liability under the AEMLD. Defendants argue that Hendricks and Ocampo are corporate agents and are not "sellers" as defined under the AEMLD; thus, neither can be held liable for a violation of the doctrine.

The Alabama Supreme Court has not yet addressed the question of whether a

10

sales representative is a "seller" exposed to possible liability under the AEMLD or, conversely, is an agent of the "seller" who would be shielded from liability.

Southern contends that because Alabama courts have never addressed the issue at hand and due to the lack of a clear mandate by Alabama courts on the issue, an Alabama court might determine Hendricks or Ocampo to be a "seller" under the AEMLD. The bright-line rule is that a "seller who markets a product not reasonably safe when applied to its intended use in the usual and customary manner" is exposed to liability under the AEMLD "[a]s long as there is a causal relationship between the defendant's conduct and the defective product." *Casrell v. Altec Industries, Inc.*, 335 So.2d 128, 132 (Ala. 1976) (emphasis added).[8] The parties have not cited, and this court is unaware of the existence of, any published opinion from an Alabama court addressing liability under the AEMLD of a sales representative who is employed by the manufacturer of a product. However, there are persuasive cases that distinguish between a sales representative and a "seller." The court agrees with Defendants that these cases indicate that a sales representative is not a "seller" as defined under the AEMLD in certain instances. While numerous persuasive decisions exist supporting both sides of this argument, the court is persuaded that Hendricks and Ocampo, under

---

[8]*Casrell*, along with *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala. 1976), define the scope of the AEMLD. Neither case addresses a distinction between a "seller" or a "representative of the seller."

the specific facts and allegations in this case, are corporate agents and not "sellers" for purposes of the AEMLD.

Southern argues that this court's Memorandum Opinion in *Tracy v. Eli Lilly*, Case No. 2:06-cv-00536-VEH, is dispositive of the issues presented in the instant case. The facts of *Tracy* are readily distinguishable from the facts of this action. In *Tracy*, this court was presented with a pharmaceutical sales representative who had constructive knowledge that a drug was unsafe, the representative marketed the drug as being safe to a plaintiff's treating physician, and the plaintiff suffered the known ill-effects of the drug. The instant case presents a different set of circumstances. In *Tracy*, this court held that where a pharmaceutical sales representative has actual or constructive knowledge that a specific drug being marketed by that representative has a particular dangerous side effect, where the drug company's training of its sales force required sales representatives to employ various tactics of evading physicians' questions regarding a particular known side effect of a drug, where the sales representative represents that the drug is safe as to that side effect to a plaintiff's treating physician, where a plaintiff is subsequently prescribed the drug by that physician, and where the plaintiff suffers from the side effect known to the sales representative, that such a representative faces potential liability as a "seller" under the AEMLD due to that representative's unique ability to prevent the harmful product

12

from reaching the plaintiff.

Southern's allegations against Hendricks and Ocampo that are contrary to Hendricks' and Ocampo's sworn affidavits are not adequately refuted by the evidence offered by Southern. *See Legg*, 428 F.3d at 1323. Specifically, *Tracy* differs from this action in that Southern's allegations and evidence fail to indicate even the possibility of certain necessary causal links indicating that Hendricks or Ocampo knew Neurontin might be unsafe, that Hendricks or Ocampo were trained to evade physicians' questions regarding the safety of the drug, or that Hendricks or Ocampo represented Neurontin as being safe, as to the side effect of increased risk for attempting suicide, to Southern's treating physician. Southern's voluminous evidence detailing methodical planning on the part of Pfizer Inc. to market Neurontin for various off-label uses does not establish Hendricks' or Ocampo's knowledge of Neurontin's alleged negative side effects; specifically that Neurontin has been linked to increased instances of suicide when the drug is used in an off-label capacity to treat chronic fatigue syndrome. The limited holding in *Tracy* is not applicable to the facts of the instant action.

Defendants direct the court to the case of *In re Rezulin Products Liability Litigation*, 133 F.Supp.2d 272, 288 (S.D.N.Y. 2001), in which the court considered Alabama law and opined that holding a pharmaceutical sales representative liable

under the AEMLD would contravene the doctrine's purpose and scope.[9] The court observed, "[t]he AEMLD is founded on broader moral notions of consumer protection and on economic and social grounds, placing the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of these products." *Id.* at 287 (quoting *Atkins v. American Motor Corp.*, 335 So.2d 134, 139 (Ala. 1976)) (internal marks omitted). The court found that there was "no reasonable basis for supposing that [an Alabama court] would impose liability on the sales representative" due to the representative's status as merely an agent of the manufacturer/seller and, as a corporate employee, the sales representative was not "the best one able to prevent sales of defective drugs." *Id.* at 288 (internal marks omitted).

Applying the holding of *In re Rezulin*, a United States District Court for the Middle District of Alabama held that a sales representative who sold a replacement hip that later proved defective "is not deemed a 'seller' within the meaning of the AEMLD." *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, *6 (M.D. Ala. 2005). While the *Bloodsworth* court relied heavily on *In re Rezulin*, the court noted an unpublished opinion by the MDL Court in *In re Baycol Products Liability*

---

[9]The court notes that district court decisions, including decisions of this district, are not binding on this court.

14

*Litigation*, M.D.L. No. 1431, *4-*7 (D.Minn. March 26, 2004), which held that "the purpose of the AEMLD did not support a claim against a sales agent who had no authority to compel or prevent the distribution of particular products." *Id.* (internal marks omitted).

The court finds the holdings in *Rezulin* and *Bloodsworth* persuasive and applicable to the facts of the instant case. There is simply no evidence that Hendricks or Ocampo, in either's capacity as a Territory Representative employed by Pfizer Inc., had any meaningful control over the distribution of Neurontin or that either could have prevented, in any substantial way, the dispersion of Neurontin to consumers; specifically, to Southern.

Based on the foregoing, the court finds that the parameters of Alabama law are sufficiently established so as to lead to the conclusion that there is no reasonable possibility for concluding that, under the specific facts of this case, an Alabama state court would find Hendricks liable under the AEMLD. *See Triggs*, 154 F.3d at 1287.

**B.     As a matter of law, Southern cannot possibly maintain a claim for fraudulent misrepresentation or negligent misrepresentation against Hendricks or Ocampo in state court.**

A claim for fraudulent misrepresentation comprises the following elements: "(1) a false representation (2) concerning a material fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result." *Fisher v. Comer Plantation*,

15

772 So.2d 455, 463 (Ala. 2000) (quoting *Baker v. Bennett*, 603 So.2d 928, 935 (Ala. 1992). "An essential element of fraudulent-misrepresentation and fraudulent-suppression claims is a duty to disclose." *Nesbitt v. Frederick*, 2006 WL 1195872, *4 (Ala. 2006).

Pfizer Inc., not Hendricks or Ocampo, had a duty to disclose any dangers regarding Neurontin to Southern's prescribing physician. Pursuant to the learned intermediary doctrine, which has been adopted by the Supreme Court of Alabama, any duty to disclose would be owed to Southern's prescribing physician, and not to Southern, by Pfizer Inc., and not by Hendricks or Ocampo individually. *See Stone v. Smith, Kline, and French Laboratories*, 447 So.2d 1301 (Ala. 1984) (citing *Reyes v. Wyeth Laboratories*, 489 F.2d 1264 (5th Cir. 1974)) (the court applied the learned intermediary doctrine and determined that makers of prescription drugs have a duty to warn a patient's prescribing physician, and not the patient, regarding potential dangers associated with prescription medications). *See also, Walls v. Alpharma USPD, Inc.*, 887 So.2d 881 (Ala. 2004). As a matter of law, Hendricks and Ocampo had no duty to disclose any information to Southern; accordingly, Southern cannot possibly maintain a cause of action against either Defendant for fraudulent misrepresentation in state court. *See Fisher*, 772 So.2d at 463.

In *Legg*, *supra*, applying Alabama law, the Eleventh Circuit held that a

negligent misrepresentation claim is untenable against a pharmaceutical sales representative absent a showing of bad faith. *Legg*, 428 F.3d at 1324. The court opined that "those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith." *Id.* "A misrepresentation claim predicated on an allegation that a sales representative 'innocently passed on incorrect information' about a manufacturer's product simply is not cognizable under Alabama law." *Bloodsworth*, 2005 WL 3470337 at *8 (quoting *Legg*, 428 F.3d at 1324). Hendricks' and Ocampo's affidavits clearly establish that both acted as mere "conduits" of information for Pfizer Inc.  As such, the court concludes that Southern's claim predicated on negligent misrepresentation cannot possibly survive in state court. *See Id.*

**C.     As a matter of law, Southern cannot possibly maintain a claim for failure to warn against Hendricks or Ocampo in state court.**

The court finds no reasonable basis under Alabama law to support a failure to warn claim against Hendricks or Ocampo.  Pursuant to the learned intermediary doctrine, any duty to warn would be owed to Southern's prescribing physician by Pfizer Inc. and not by Hendricks.  *See Stone v. Smith, Kline, and French Laboratories*, 447 So.2d 1301 (Ala. 1984) (citing *Reyes v. Wyeth Laboratories*, 489 F.2d 1264 (5th Cir. 1974)) (applied the learned intermediary doctrine and determined

that makers of prescription drugs have a duty to warn a patient's prescribing physician, and not the patient, regarding potential dangers associated with prescription medications). *See also, Walls v. Alpharma USPD, Inc.*, 887 So.2d 881 (Ala. 2004). As a matter of law, Southern's failure to warn claims are untenable.

### D.    As a matter of law, Southern cannot possibly maintain a claim for breach of warranty or negligence against Hendricks or Ocampo in state court.

The court finds no reasonable basis under Alabama law to support Southern's claims for breach of an implied warranty of merchantability, breach of an implied warranty of fitness for a particular purpose, and breach of express warranty against Hendricks or Ocampo.

It has been clearly established that warranty and negligence claims are not subsumed by the AEMLD. *See Tillman v. R.J. Reynolds Tobacco Co.*, 871 So.2d 28, 34-35 (Ala. 2003). However, Southern's claims against Hendricks or Ocampo for breach of warranty and negligence do not present a possibility of success under Alabama law.

A breach of warranty claim is viable only against the "seller" of the goods. *See* Ala. Code §§ 7-2-313(1), 7-2-314(1), 7-2-315(1) (express and implied warranty claims refer only to warranties created by the seller of a product). As discussed *supra*, Hendricks and Ocampo are not "sellers" of Neurontin; rather, they are agents

of the "seller." Accordingly, under Alabama law, Southern cannot maintain a breach of warranty claim against Hendricks or Ocampo.

In keeping with this court's holding that Hendricks and Ocampo are not "sellers" of Neurontin, Southern's negligence claims against Hendricks and Ocampo fail. Southern asserts that "Defendants ... have a duty to exercise the necessary degree of care ... required by manufacturers of health care products." [Pl. Compl., ¶ 84]. A reading of Southern's complaint removes Hendricks and Ocampo from any possibility of liability under Southern's negligence claim due to the unchallenged assertion in Hendricks' and Ocampo's affidavits that neither had "any involvement with the manufacture, development, or testing of Neurontin." [Hendricks Aff., ¶ 9; Ocampo Aff., ¶ 7]. In addition, "a claim for negligent manufacture or sale is cognizable against [only] the manufacturer or seller." *Bloodsworth*, 2005 WL 3470337, *7. Hendricks and Ocampo are neither; thus, Southern's negligence claim against Hendricks and Ocampo has no possibility of survival in Alabama state court.

## E.      As a matter of law, Southern cannot possibly maintain a claim for unjust enrichment against Hendricks or Ocampo in state court.

As stated by the Alabama Supreme Court, to prevail on an unjust enrichment claim, a plaintiff must establish either that the defendant holds money that, in equity and good conscience, belongs to the plaintiff, or that the defendant holds money that

was improperly paid because of mistake or fraud. *See Avis Rent-A-Car Systems, Inc. v. Heilman,* 876 So.2d 1111, 1123 (Ala. 2003).

In the instant case, Southern asserts that Defendants "have knowingly received, and continue to receive, a substantial benefit at the expense of Plaintiff." [Pl. Compl., ¶ 81]. Further, Southern argues that "[i]t would be unjust and unconscionable to permit Defendants to enrich themselves at the expense of Plaintiff and to retain the funds that Defendant [sic] wrongfully obtained from Plaintiff." [Pl. Compl., ¶ 82].

Southern's unjust enrichment claim against Hendricks and Ocampo are inextricably linked to the success of Southern's fraudulent misrepresentation claim against either Defendant.[10] *See Id.* Where a plaintiff cannot maintain a fraudulent misrepresentation claim against a defendant, that plaintiff will not be permitted a viable claim of unjust enrichment which is based on an untenable fraudulent misrepresentation claim. As this court has determined that Southern's fraudulent misrepresentation claim against Hendricks fail under Alabama law, Southern cannot possibly maintain a claim of unjust enrichment against Hendricks or Ocampo premised on a failed fraudulent misrepresentation claim.

---

[10]Southern does not assert that Hendricks or Ocampo is holding money that in equity or good conscience belongs to Southern nor does Southern claim that Hendricks or Ocampo was paid money as a result of mistake. Accordingly, the court will not offer analysis as to those instances under which a claim for unjust enrichment can occur pursuant to Alabama law.

**F.    As a matter of law, Southern cannot possibly maintain a claim for civil conspiracy against Hendricks or Ocampo in state court.**

Southern contends that Defendants "entered into a conspiracy to suppress and fraudulently misrepresent material information that they were under a duty to disclose to Plaintiff." [Pl. Compl., ¶ 99]. The Alabama Supreme Court has held that:

> A civil conspiracy requires a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful end by unlawful means." *McLemore v. Ford Motor Co.,* 628 So.2d 548, 550 (Ala. 1993). "Where civil liability for a conspiracy is sought to be enforced, the conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy alleged but the wrong committed." *Id.* (quoting *O'Dell v. State ex rel. Patterson,* 117 So.2d 164 (Ala. 1959) (internal citations omitted)). To establish [a] conspiracy to defraud claim, [a plaintiff] must present evidence of a viable underlying fraud claim. *McLemore,* 628 So.2d at 550.

*Wilson v. Gayfers Montgomery Fair Co.*, 953 F.Supp. 1415, 1423 (M.D. Ala. 1996).

Under Alabama law, Southern's claim against Hendricks and Ocampo for conspiracy to fraudulently misrepresent material information regarding Neurontin can only be maintained if Southern presents evidence of a viable underlying fraudulent misrepresentation claim. *See Id.* As a threshold matter, Southern's conspiracy claim against Hendricks and Ocampo fails in light of this court's holding, discussed *supra*, that Hendricks and Ocampo owed no duty to Southern; thus, as a matter of law, neither Defendant can be held liable under the theory of fraudulent misrepresentation. Fraudulent misrepresentation requires that a defendant owe a duty to a plaintiff. *See*

*Nesbitt*, 2006 WL 1195872 at *4. Hendricks and Ocampo owe no duty to disclose to

Southern. *See Stone v. Smith, Kline, and French Laboratories*, 447 So.2d 1301 (Ala.

1984). Because Southern cannot maintain the underlying claim of fraudulent

misrepresentation against Hendricks in state court, Southern additionally cannot

maintain a claim of conspiracy to fraudulently misrepresent against those same

Defendants. *See Nesbitt*, 2006 WL 1195872 at *4.

In addition, the intra-corporate conspiracy doctrine precludes the possibility

that Southern could maintain a claim of civil conspiracy against Hendricks or

Ocampo. The intra-corporate conspiracy doctrine holds that:

> acts of corporate agents are attributed to the corporation itself, thereby
> negating the multiplicity of actors necessary for the formation of a
> conspiracy. Simply put, under the doctrine, a corporation cannot
> conspire with its employees, and its employees, when acting in the scope
> of their employment, cannot conspire among themselves. The doctrine
> is based on the nature of a conspiracy and the legal conception of a
> corporation. It is by now axiomatic that a conspiracy requires a meeting
> of the minds between two or more persons to accomplish a common and
> unlawful plan. However, under basic agency principles, the acts of a
> corporation's agents are considered to be those of a single legal actor.
> Therefore, just as it is not legally possible for an individual person to
> conspire with himself, it is not possible for a single legal entity
> consisting of the corporation and its agents to conspire with itself.

*McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir.2000) (internal

citations and quotations omitted). It is "not legally possible" for Hendricks or

Ocampo, acting as agents of Pfizer Inc. and within the scope of their employment, to

conspire with one another or with Pfizer Inc. *Id.* It has been clearly established that Hendricks and Ocampo are agents of Pfizer Inc. Southern does not assert that Hendricks and Ocampo were acting outside the scope of their employment when promoting Neurontin; therefore, the intra-corporate conspiracy doctrine applies. Accordingly, there is no possibility that Southern can maintain a claim for civil conspiracy against either Hendricks or Ocampo in state court.

## Conclusion

The court concludes that, based on the foregoing, Southern cannot maintain any cognizable claim against Hendricks or Ocampo in Alabama state court. Accordingly, Hendricks and Ocampo have been fraudulently joined in this action, and their citizenship will be ignored for the purpose of establishing diversity jurisdiction in this case.

A separate Order will be entered consistent with this Memorandum Opinion. **DONE** this 23rd day of June, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

23