IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIE MAE PUGH, | * |
| | * |
|     Plaintiff, | * |
| | * |
| v. | * CASE NO.: 2:06-cv-00551-WHA-SRW |
| | * |
| JOHNSON & JOHNSON, INC. et al. | * |
| | * |
|     Defendants. | * |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION TO REMAND**

Plaintiff, Willie Mae Pugh, by and through her undersigned counsel, respectfully submits the following Memorandum of Law in response to the Defendants' Response to Plaintiff's Motion to Remand.

In addition to the arguments contained in this response, Plaintiff reasserts all arguments set out in the original Motion to Remand and Brief in Support of Motion to Remand. Plaintiff has previously responded to Defendants' Motion to Stay in a separate document, which was submitted and filed with this court on July 18, 2006; therefore, this response is limited to the reasons why Plaintiff's Motion to Remand is proper and is due to be **GRANTED.** Plaintiff's case should be remanded to the Circuit Court of Barbour County, Alabama for the following reasons:

    1.    Plaintiff reasserts that this Court lacks subject matter jurisdiction. The Plaintiff and two of the individually named Defendants are citizens of Alabama. Neither of the individually named Defendants disputes their residence and citizenship in the State of Alabama. As such, complete diversity of jurisdiction is absent.

2. The Defendants have wrongly interpreted legal authority in alleging that Plaintiff has no claim as a matter of fact. While Defendants relied heavily on an Eleventh Circuit Court of Appeals decision in *Legg v. Wyeth,* there is no indication that this case has overturned the legal authority relied on in Plaintiff's original Motion to Remand, specifically *Triggs v. John Crum Toyota, Inc.* and *Crowe v. Coleman,* which were decided by the same court. Further, with respect to these cases, it is unclear whether or not the issue of fraudulent joinder is determined by the allegations in the Plaintiff's Complaint, as stated in *Triggs,* or by the allegations at the time of removal, as stated in *Legg*. This ambiguity does not definitively support the requirement alleged by the Defendants' that the Plaintiff had to specifically rebut any declarations made by the Individual Resident Defendants since such declarations were not available at the time of the Plaintiff's Complaint. Because the holdings in *Triggs* and *Crowe* are still considered good law, and because there are significant contradictions in the case law on this issue, Defendants have failed to establish that that there is "no possibility" that the Plaintiff can prevail in state court against the Individual Resident Defendants.

3. The allegations made against the Individual Resident Defendants are sufficiently pleaded under and supported by Alabama law. Specifically, the allegations set forth in Plaintiff's state court complaint adequately set forth factual and legal bases to support the claims against the Individual Resident Defendants, and the stated allegations clearly indicate that the Individual Resident Defendants acted independently and in concert with Defendant Johnson & Johnson. Joint and several liability and alternative liability, contrary to the confusing arguments of the Defendants, are well-recognized methods of pleading under Alabama law.

## ARGUMENT

**A.     Diversity jurisdiction does not exist.**

Plaintiff reasserts that the Defendants do not dispute that complete diversity is missing on the face of Plaintiff's Complaint. Rather, the Defendants, in contravention of the settled law of this State, contend that the citizenship of the Individual Resident Defendants should be disregarded on the ground that they were fraudulently joined and that there is no possibility that Plaintiff could prevail against the Individual Resident Defendants in an Alabama state court. However, the Defendants made this argument by relying on legal authority that does not expressly overrule the standard relied on by the Plaintiff in its original Motion to Remand. Thus, the Defendants' argument does not require a finding that Plaintiff's motion should be denied.

**B. *Legg v. Wyeth* Is Not Controlling and Is Distinguishable from the Present Case**

The recent 11th Circuit case cited by Johnson & Johnson is not controlling on the issue of subject matter jurisdiction and is distinguishable from the present case. In *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005) (Ex. A), the Circuit Court of Appeals for the Eleventh Circuit did not review the district court's order granting plaintiff's motion to remand: "While 28 U.S.C. § 1447(d) bars our review of a remand such as this one based on lack of subject matter jurisdiction, the statute does not 'exclude the district court's assessment of costs from appellate review.'" *Legg,* 428 F.3d at 1319-1320 (quoting *Fowler v. Safeco Ins. Co. of Am.*, 915 F.2d 616 (11th Cir. 1990)). Rather, the sole issue before the court was the correctness of the district court's order awarding

3

attorneys' fees and costs to the plaintiffs. *Legg*, 428 F.3d at 1318 ("Wyeth appeals the district court's order awarding attorneys' fees and costs to the Plaintiffs."). In determining whether costs were properly assessed, the court stated that costs should only be assessed in cases of improvident removal. *Id.* at 1322. It was within that framework that the court went on to determine whether Wyeth's removal in the case was improvident. The court concluded that Wyeth's removal was not improvident because Wyeth had submitted affidavits of its sales representatives in support of the notice of removal and Plaintiffs have failed to rebut the averments in the affidavits with other evidence. Since the Plaintiffs offered no response to the allegations of Wyeth, the court concluded that there was no question of fact for the district court to resolve. *Id.* at 1323. In the limited context of whether to award costs and attorneys' fees, the court concluded that the removal was not improvident and the award of costs and attorneys' fees should be reversed.

Furthermore, the *Legg* case does not "supersede the cases cited by plaintiff in which district courts in Alabama have remanded cases involving sales representatives" and does not stand for the blanket proposition that all sales representatives in every single case are fraudulently joined.

Here, Defendants rely on the decision in *Legg v. Wyeth* as disposing of all arguments made in Plaintiff's original Motion to Remand. This assertion by the Defendants is overbroad and unwarranted. In Plaintiff's original Motion to Remand, Plaintiff cited *Triggs v. John Crum Toyota, Inc.*, stating that arguments regarding fraudulent joinder fail if there is any possibility that a state court would find that the **Complaint** states a cause of action against a resident defendant. *Triggs*, 154 F.3d at 1287.

4

However, Defendant uses *Legg* to argue that the determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings **at the time of removal**, supplemented by any affidavits and deposition transcripts submitted by the parties. *Legg*, 428 F.3d at 1321.  These two standards were outlined by the same court, yet neither one expressly overrules the other.  Therefore, Defendants had no basis to solely rely on *Legg* to support the proposition that Plaintiff has no claim as a matter of fact simply because Plaintiff failed to rebut any of the sworn declarations given by the Individual Resident Defendants.  According to the standard in *Triggs*, there were no sworn declarations yet available for the Plaintiff to rebut because little or no discovery had commenced at the time her complaint was filed as it is in the case at bar.  Instead, the Plaintiff's Complaint alleged the Individual Resident Defendants' wrongdoing with as much particularity as would be available at the time of the Complaint.  Thus, as it stands, Plaintiff's Complaint sufficiently alleges a cause of action against the Individual Resident Defendants; thus, her Motion to Remand should be granted.

**C.  Motion To Remand has been Granted Despite the *Legg* Decision**

The United States District Court for the Middle District of Alabama recently granted plaintiffs' motion to remand while citing *Legg*. *Morris Forest Products, LLC v. Keystone Exterior Design, LLC, et al.*, 2005 WL 3455882 at *3 (M.D. Ala. Dec. 16, 2005).  In *Morris*, the case was originally filed in the Circuit Court of Tallapoosa County, Alabama.  *Id.* at *1.  The plaintiffs were Morris Forest Products, LLC and Stan Pittman, a citizen of Georgia.  *Id.*  The plaintiffs asserted claims against various defendants, Keystone and Universal Forest Products.  *Id.*  The plaintiffs claimed that a licensing

5

agreement was entered into between Keystone and Morris that gave Morris the right to market a residential deck system. *Id.* According to the licensing agreement, Morris also had the right of first refusal if Keystone received an offer to purchase its stock. *Id.* Later, Keystone was sold to Universal Forest Products, also a defendant in the case, which terminated the licensing agreement with Morris. *Id.* As a result of the sale, plaintiffs asserted that Pittman, a contractor with Morris, lost commissions and suffered damages. *Id.* Pittman alleged that certain representations were made to him in a meeting with Keystone and Universal and that the defendants concealed the nature and extent of their relationship from him. *Id.* at *2. Pittman further alleged that after he was offered employment by Keystone and he refused, Morris was not allowed to continue to make the deck systems. *Id.* The defendants removed the case to federal court on the grounds that diversity jurisdiction was present. Specifically, the defendants claimed that the non-diverse defendant and Pittman were fraudulently joined. *Id.* at *1. The court found that the non-diverse defendant and plaintiff were not fraudulently joined.

In arguing that diversity jurisdiction existed between the parties, the defendants asserted that "there [was] no possibility that Pittman [could] establish any claims against any Defendant in this case because Pittman was merely an employee, or agent, of Morris and Morris [was] the only true Plaintiff in the case." *Id.* at 3. The plaintiffs argued that "there [was] a possibility that a state court [would] find that Pittman [could] establish a cause of action against one or more Defendants because Alabama law recognizes a claim by an individual employed by a corporation where defendants have acted with intent to harm that individual." *Id.* In concluding that the case should be remanded to state court, the court stated:

6

> Applying the legal standard of "any possibility," and bearing in mind that the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear, the court has concluded that Plaintiff Stan Pittman and Defendant Dana Rector have not been fraudulently joined."

*Id.*

Here, Plaintiff has alleged that the Individual Resident Defendants acted in concert with and as agents of the other Defendants and are therefore jointly and severally liable to the Plaintiff for the injuries she has sustained. Since *Legg* is not controlling in this matter, federal jurisdiction is not present and there is a possibility that a cause of action against the Individual Resident Defendants exists as a matter of fact, this case should be remanded to the Circuit Court of Barbour County, Alabama.

**C. Plaintiff Has Asserted Valid Claims Against the Sales Representative Defendants**

Contrary to what Defendants have argued, Plaintiff has asserted valid claims against the Sales Representative Defendants, including claims under AEMLD, claims for fraudulent misrepresentation and suppression, and claims for negligence and breach of warranty. In her Complaint, Plaintiff alleges that the Alabama Sales Representatives marketed, sold, supplied and/or otherwise distributed the Ortho Evra birth control patch. (Compl. ¶¶ 11-12) Plaintiff alleges that all Defendants are jointly and severally liable to Plaintiff for her injuries and that the sales representatives acted as an agent of the other Defendants within the course and scope of the agency. (Compl. ¶¶ 14-15) Between April 2002 and September 2003, the FDA became aware of significant adverse reactions due to Ortho Evra use. (Compl. ¶ 30) Despite the well-documented issues regarding Ortho Evra's safety, Defendants failed to warn physicians and consumers of the increased risk of developing blood clots, strokes, heart attacks and/or deep vein thrombosis from using

7

Ortho Evra. (Compl. ¶ 33) Plaintiff further alleges that Defendants knew that Ortho Evra was defective and unreasonably dangerous as designed, but continued to design, manufacture, market, distribute and sell this product to maximize sales and profits. (Compl. ¶ 36) Plaintiff further alleges that as a direct and proximate result of Defendants placing Ortho Evra on the market and Plaintiff's ingestion of the drugs, Plaintiff suffered physical injury, including stroke and blood clot. (Compl. at ¶ 34). These allegations are sufficient to state a cause of action under AEMLD against all defendants, non-residents and residents alike.[1]

Second, Plaintiff has asserted valid fraudulent misrepresentation and suppression claims against the Sales Representative Defendants. District Courts in Alabama have addressed on numerous occasions the issue of whether sales representatives are fraudulently joined in relation to claims of fraudulent misrepresentation and fraudulent suppression. The following is a list of cases where the District Court has reviewed similar allegations of fraudulent misrepresentation and suppression to those in this case and found that plaintiff has alleged valid claims under Alabama law. In each situation, the District Court rejected Defendants' argument regarding fraudulent joinder and remanded the case to state court. *Floyd v. Wyeth*, No. 03-C-2564-M (N.D. Ala. Oct. 20, 2003) (Clemon, J.*); Crittenden v. Wyeth*, No. 03-T-920-N (M.D. Ala. Nov. 21, 2003) (Thompson, J.); *Terrell v. Wyeth*, No. CV-03-BE-2876-S (N.D. Ala. Dec. 12, 2003) (Bowdre, J.) ("Although the plaintiffs' claims against defendant Parker appear to raise novel questions of Alabama state law, this court will not speculate that the plaintiffs have *no* possibility of establishing a cause of action against this non-diverse defendant. Little, if any, discovery has been done to-date in this case; thus, it would be premature for this

---

[1] See Pl.'s Mot. to Remand 12-16 (June 23, 2006).

court to make rash decisions regarding the nature and the timing of the injury sustained by the plaintiffs, or the employment history of defendant Parker. Nor can the court conclusively determine that plaintiffs would not be successful in urging its various theories under Alabama law."); *Ballard v. Wyeth*, No. 03-T-1255-N (N.D. Ala. Jan. 23, 2004) (Thompson, J.); *Brunson v. Wyeth*, No. 03-T-1167-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); *Blair v. Wyeth*, No. 03-T-1251-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); *Storey v. Wyeth*, No. CV-04-BE-27-E (N.D. Ala. Jan. 30, 2004) (Bowdre, J.); *Cash v. Wyeth*, No. 03-RRA-3378-E (N.D. Ala. Feb. 3, 2004) (Armstrong, Mag. J.); *Marshal v. Wyeth*, No. CV-04-TMP-179-S (N.D. Ala. Feb. 18, 2004) (Putnam, Mag. J.); *McGowan v. Wyeth*, No. CV-04-TMP-298-S (N.D. Ala. Feb. 24, 2004) (Putnam, Mag. J.); *Johnson v. Wyeth*, No. CV-04-TMP-224-S (N.D. Ala. Feb. 23, 2004) (Putnam, Mag. J.); *Bradford v. Wyeth*, No. 03-P-3157-5 (N.D. Ala. Feb. 27, 2004) (Proctor, J.); *Smith v. Wyeth*, No. 04-P-226-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); *Boudreaux v. Wyeth*, No. CV-04-P-227-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); *Bridges v. Wyeth*, No. 04-AR-0297-J (N.D. Ala. Mar. 2, 2004) (Acker, J.); *Hough v. Wyeth*, No. 04-H-393-S (N.D. Ala. Mar. 5, 2004) (Hancock, J.); *Brogden v. Wyeth*, No. 04-T-068-S (M.D. Ala. Mar. 8, 2004) (Thompson, J.); *Reeder v. Wyeth*, No. 04-T-066-N (M.D. Ala. Mar. 8, 2004) (Thompson, J.); *Eaton v. Wyeth*, No. CV-04-P-380-M (N.D. Ala. Mar. 9, 2004) (Proctor, J.); *Allen v. Wyeth*, No. 04-CV-0238-T (M.D. Ala. Apr. 9, 2004) (Thompson, J.); *Chestnut v. Wyeth*, No. 04-CV-0295-T (M.D. Ala. May 3, 2004) (Thompson, J.); *King v. Wyeth*, No. 04-CV-0409-T (M.D. Ala. May 24, 2004) (Thompson, J.); *Culpepper v. Wyeth*, No. 04-CV-0411-T (M.D. Ala. May 24, 2004) (Thompson, J.); *Braden v. Wyeth*, No. 04-CV-0384-T (M.D. Ala. May 24, 2004) (Thompson, J.); *Cross v. Wyeth*, No. 03-0882-BH-M (S.D.

Ala. Mar. 29, 2004) (Hand, J.); *Bennett v. Wyeth*, No. 04-CV-0416-T (M.D. Ala. June 2, 2004) (Thompson, J.).

In sum, District Courts in Alabama have rightly found that plaintiffs who allege claims of fraudulent misrepresentation and suppression against sales representatives of drug companies have alleged valid claims under Alabama law. Alabama Defendant Sales Representatives are not fraudulently joined in this case. Diversity jurisdiction is not present. Furthermore, this Court, in remanding similar cases, has stated that "[i]f there is 'a colorable cause of action – that is, if the state law *might* impose liability on the resident defendant under the facts alleged – then there is no fraudulent joinder." Order, *Fenner, et al. v. Wyeth, et al.*, No. 4:04CV00342 (July 28, 2004 E.D. Ark.). This Court also stated that if the sufficiency of the complaint against the non-diverse defendant is questionable, "the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide." *Id.* Furthermore, whatever facts the Plaintiff does allege are not to be weighed on their merit beyond whether the allegations are arguable under state law. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (1997). Instead, the district court's review of Plaintiff's allegations is limited to checking for obviously fraudulent or frivolous claims. *Id*. at 1542.

In the case at bar, Plaintiff's allegations arguably provide a reasonable basis for establishing a cause of action against Forbes and Morrow. Specifically, Plaintiff reasserts that the Individual Resident Defendants aggressively marketed Ortho-Evra® to healthcare professionals, including Ms. Pugh's physician, by frequently calling on physicians, distributing samples to physicians to be given to patients, conducting

educational seminars for physicians, and distributing sales literature to healthcare professionals and the consuming public. The Individual Resident Defendants, in communications with physicians, compared the efficacy of Ortho-Evra® to other existing contraceptive products, sought to distinguish Ortho-Evra® from other contraceptives already on the market, and worked to persuade physicians to prescribe Ortho-Evra® to their patients. The Individual Resident Defendants provided physicians with Ortho-Evra® product information. Throughout these activities, the Individual Resident Defendants worked to increase the sales of Ortho-Evra® and their own personal financial gain.

The Defendants including the Individual Resident Defendants had far superior knowledge of the efficacy and safety profile of Ortho-Evra® over that of prescribing physicians and patients who used the product. Ms. Pugh and her prescribing physician detrimentally relied on information provided by the Individual Resident Defendants. The Individual Resident Defendants provided false, fraudulent, incorrect, misleading and/or incomplete information (such as inadequate warnings of risks of harm and adverse effects from the use of Ortho-Evra®) to the prescribing physician, and the prescriber passed this erroneous information on to his patients, including Ms. Pugh. Ms. Pugh relied on such information through the representations of her physician. If these allegations are proven to be true, a finding of individual liability under AEMLD against the Individual Resident Defendants is more than a mere "possibility." In essence, Plaintiff has sufficiently alleged certain wrongdoing on the part of the Individual Resident Defendants that they have attempted to deny through declarations. Because this court is not charged with

weighing the merits of the Plaintiff's claim beyond whether it is **arguable** under state law, Plaintiff's Motion to Remand should be granted.

### D. Plaintiff Reasserts the Argument that the Individual Resident Defendants Are Not Fraudulently Joined

The Defendants have made no claim that Plaintiff fraudulently pleaded jurisdictional facts; so again, this Court's inquiry is limited to determining whether there is a *possibility* that the state court might find, under Alabama law, that the Plaintiff has asserted valid claims against the resident defendant. See Triggs, 154 F.3d at 1287; Crowe, 113 F.3d at 1538. Where, as here, the Notice of Removal is filed before the Plaintiff has had full opportunity to develop her claims against the Individual Resident Defendants through discovery, Alabama federal courts have assessed those claims in accordance with the standard of Fed. R. Civ. P. 11. See, Clay, 77 F. Supp. 2d at 1224 (De Ment, J.); see also Sellers v. Foremost Ins. Co., 924 F. Supp. 1116, 1118-19 (M.D. Ala. 1996) (Thompson, J.). "[T]o block a fraudulent-joinder charge based on lack of evidence, a plaintiff who has not been able to engage in full discovery must be able to provide some showing that her claim against the resident defendant has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Sellers, 924 F. Supp. at 1119. "[T]o block a fraudulent-joinder charge *based on lack of legal support*, a plaintiff need only show that her claim against a resident defendant is warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Id. at 1119 n. * (emphasis in original).

"If there is *a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." Coker, 709 F.2d at 1440-41 (citing Davis v. GMC, 353 F. Supp.2d 1203, 1207 (M.D. Ala. 2005) (emphasis added). The Plaintiff is not required to have a winning case against a resident defendant, but only have a *possibility* of stating a valid cause of action in order to defeat arguments of fraudulent joinder. Triggs, 154 F.3d at 1287.

It is well settled under Alabama law that employees of a company may be held liable for their active participation in the torts of the company. "[O]fficers and employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity." Ex parte Charles Bell Pontiac, 496 So. 2d at 775 (citing Candy H. v. Redemption Ranch, Inc., 563 F. Supp. 505, 513 (M.D. Ala. 1983)); see Clay v. Brown & Williamson Tobacco Corp., 77 F. Supp. 2d 1220, 1224 (M.D. Ala. 1999); see Seaborn v. R. J. Reynolds Tobacco Co., 1996 WL 943621 (M.D. Ala., Dec. 30, 1996) (NO. CIV. A. 96-T-1540-N). In Clay and Seaborn, *supra*, this Court found that, to the extent a manufacturer defendant allegedly violated AEMLD, "it acted through its employees; the company does not employ ghosts." Clay, 77 F. Supp. 2d at 1224; Seaborn, 1996 WL 943621, at *3. The Court allowed the plaintiffs to pursue the distributors and employee sales representatives individually -- even in the absence of any personal contact with the plaintiffs -- and to substitute new individual defendants in the event plaintiffs had named the wrong individuals at the outset. Significantly, the Court noted that discovery might well establish that the

individual in-state defendant might have had superior knowledge to others, which could establish his independent liability under the AEMLD.

Moreover, other United States District Courts have consistently rejected arguments that in-state defendant sales representatives are fraudulently joined in the context of products liability actions, seeking damages as the result of a defective drug. See Barry Pace, et al. v Parke-Davis, No. 3:00-3046 (N.D. Ala. Nov. 21, 2000)(Johnson, J.); see also Donald McCaffery v. Warner-Lambert Co., et al., No. 4:00-2848 (N.D. Ala. Dec. 8, 2000) (Propst, J.); see also Acton v. R.J. Reynolds Tobacco Co., No. 96-C-2737-W (N.D. Ala. Oct. 23, 1996). And other United States District Courts have remanded pharmaceutical drug cases, such as the case at bar, to state courts or refused to stay the proceedings – perhaps, most notably, the Vioxx-related products liability cases. See, Landrum v. Merck & Co., Inc., et al., Case no. CV-05-01055-J (N.D. Ala. May 25, 2005) (holding that diversity jurisdiction was absent and remanding to state court, relying upon Marshand v.Wyeth, et al., CV-03-CO-319-5-W (N.D. Ala. 2004)); Sokarda, et al. v. Merck & Co., Inc., et al., Case no. SACV-05-177-JFW (MANX) (C.D. Calif. April 22, 2005) (holding that under California law, case should be remanded to state court based upon properly named in-state defendant); Amisch v. Merck Co., Inc., et al., Case no. 04-CV-847-DRH (S.D. Ill. Dec. 22, 2004) (holding that motion to stay pending JPML's ruling on motion to transfer should be denied and that forum court should address subject matter jurisdiction, and remanding case to state court because defendant failed to meet its burden to sustain removal); Brame v. Merck & Co., Inc., et al., Case no. 05-034-GPM (S.D. Ill. Feb. 17, 2005) (holding that defendant failed to meet its burden to establish fraudulent joinder, refusing to stay proceedings pending ruling by JPML, and remanding

14

case back to state court); McQuay v. Merck & Co., Inc., et al., Case No. 05-038-GPM (S.D. Ill. Feb. 17, 2005) (same); Tomlin v. Merck & Co., Inc., et al., Case no. 04-14335-CIV-Moore (S.D. Fla. Feb. 14, 2005) (holding that motion to stay pending JPML was inappropriate, holding that plaintiff adequately pleaded a claim against sales representative under Florida law, finding that there was no fraudulent joinder, and remanding the case back to state court).

As Judge Ira DeMent wrote in Clay, 77 F. Supp. 2d at 1223, quoting de Perez, 139 F.3d at 1380-81 and Crowe, 113 F.3d at 1538, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law."  The question of whether drug sales representatives can be held liable under the AEMLD is "an arguable under state law."

**D. The Plaintiff's Complaint was Pleaded With Sufficient Particularity to Support Claims Against the Individual Resident Defendants.**

The Defendants also assert that Plaintiff failed to plead her claim of fraudulent misrepresentation with particularity.  However, in her Complaint, Plaintiff sufficiently alleges that the Individual Resident Defendants fraudulently misrepresented and/or suppressed material information regarding the safety and efficacy of Ortho-Evra and its harmful side effects in order to induce physicians to prescribe the product and to induce consumers, including Ms. Pugh, to purchase Ortho-Evra.  Plaintiff further alleges that the Individual Resident Defendants misrepresented and/or suppressed the fact that Ortho-Evra was not safe and that the Defendants were under a duty to communicate this information to Plaintiff, that the Individual Resident Defendants marketed, sold, supplied and/or otherwise distributed Ortho-Evra, that Ortho-Evra was defective and unreasonably

15

dangerous as designed, was unreasonably dangerous due to inadequate testing, and was defective as marketed due to inadequate warnings or instructions, that the Defendants failed to warn Ms. Pugh of the dangers of Ortho-Evra, that the Defendants failed to provide post-marketing warnings to Ms. Pugh after she began to use the product, and that as a direct and proximate result of the Defendants placing Ortho-Evra on the market and Ms. Pugh's use of Ortho-Evra, Ms. Pugh suffered injuries including a stroke.  These allegations are sufficient to support the claims asserted by Plaintiff in her Complaint; likewise, the claims are pleaded with sufficient particularity to support Plaintiff's fraud claims against the Defendants, including the Individual Resident Defendants.

To the extent the Court finds Plaintiff's Complaint deficient to satisfy the heightened pleading requirements, such a finding should not lead this Court to an automatic finding of fraudulent joinder.  See Bloodsworth, 2005 WL at *11 (citing Duffin v. Honeywell Intern., Inc., 312 F. Supp. 2nd 869, 870 (N.D. Miss. 2004) ("a plaintiff should ordinarily be given an opportunity to amend their complaint to allege fraud with greater particularity, before such claims are dismissed with prejudice upon a finding of fraudulent joinder") (citing Hart v. Bayer Corp., 199 F.3d 239, 248 n. 6 (5th Cir. 2000)).

In the Declarations of the Individual Resident Defendants, submitted by the other Defendants in this case, the Defendants contend in conclusory and self-serving fashion that they were not active participants in the wrongdoing alleged by the Plaintiff in her complaint.  However, it is not the Individual Resident Defendants' contentions that bear the most attention; rather, it is the absence of a critical contention that they do not make which should be the focus of this Court's attention.  Nowhere in the Declarations is it

ever asserted that either Brad Morrow or Jamie Forbes lacked specific knowledge about the dangerous propensities of Ortho-Evra, particularly with respect to the increased risk of strokes and other thrombotic events prior to the time the drug was prescribed by Plaintiff's physician. Furthermore, the declaration of Brad Morrow indicates that his primary job as an Ortho-McNeil sales representative is to provide information to healthcare providers, and that Ortho Evra is one product about which he provided such information. Nowhere in Morrow's declaration does he state that he did not provide information on Ortho Evra to Plaintiff's physician, nor does it state that Morrow did not attempt to market, advertise, distribute, or sell Ortho Evra to the Plaintiff's physician. Such a baseless allegation by the Individual Resident Defendants would likely amount to perjury when the facts and evidence of this case are presented to a jury.

## CONCLUSION

As the District Court in *Morris Forrest Products* noted, the standard in regard to fraudulent joinder is whether there is "any possibility" of stating a claim and where federal jurisdiction is not absolutely clear, remand is favored. *See Morris Forest Products, LLC v. Keystone Exterior Design, LLC, et al.*, 2005 WL 3455882 at *7 (M.D. Ala. Dec. 16, 2005). Plaintiff has stated valid claims against all Defendants, including the Individual Resident Defendants. The newly decided *Legg* case is not controlling and does not supersede the cases granting remand cited by Plaintiff.

Federal subject matter jurisdiction is not present. For this reason, Plaintiff respectfully urges the Court to grant her Motion to Remand and remand this case in its entirety to the Circuit Court of Barbour County, Alabama.

Respectfully submitted this 19th day of July, 2006.

   /s/  WESLEY CHADWICK COOK
**JERE L. BEASLEY (BEA020)**
**ANDY D. BIRCHFIELD, JR. (BIR006)**
**WESLEY CHADWICK COOK (COO079)**

**Attorneys for the Plaintiff**

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW, METHVIN,**
 **PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone: (334) 269-2343
Fax:    (334) 954-7555

L. Shane Seaborn
PENN & SEABORN, L.L.C.
P. O. Box 688
Clayton, Alabama  36016
(334) 775-9778

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing document upon the parties <u>as listed below</u> by placing a copy of same in the United States Mail, first class postage prepaid, on this the <u>19th</u> day of July, 2006.

Joseph P. H. Babington
Thomas Ryan Luna
Helmsing, Leach, Herlong, Newman & Rouse, P.C.
Post Office Box 2767
Mobile, Alabama 36652

Susan M. Sharko
Drinker, Biddle & Reath, LLP
500 Campus Drive
Florham Park, New Jersey 07932


   /s/ Wesley Chadwick Cook
**OF COUNSEL**